# Blue Valley Slate Manufacturing Co., Ltd., Appellant, v. Yeager.

*Contracts—Third parties—Right of action.*

An agreement between some of the members of a joint stock company and others that they will unite their efforts, and some of them contribute new capital, to conduct the business, which the joint stock company had abandoned some time before, is not enforceable at the suit of the company against one of those who signed the agreement, where it appeared that there was no intention of paying anything to the company, and that the benefits and profits to accrue from the agreement were expressly stipulated to belong to and be used by the parties to the agreement, as distinguished from the company.

Argued December 5, 1921. Appeal, No. 88, Oct. T., 1921, by plaintiff, from judgment of C. P. Lehigh County, June T., 1920, No. 89, for defendant, on affidavit of defense raising questions of law, in the case of Blue Valley Slate Manufacturing Company, Limited, v. Charles H. Yeager. Before ORLADY, P. J., PORTER, HENDERSON, TREXLER, KELLER and LINN, JJ. Affirmed.

Assumpsit to recover money due upon contract. Before HENNINGER, J.

534 BLUE VALLEY SLATE MFG. CO., Appel., v. YEAGER.

The facts are stated in the opinion of the Superior Court.

Judgment for defendant upon an affidavit of defense raising a question of law as to whether plaintiff could maintain the action as a third party not named in the contract. Plaintiff appealed.

*Error assigned* was the decree directing judgment for plaintiff.

*Harvey J. Steckel,* of *Aubrey, Steckel & Senger,* and with him *Morris Hoats,* for appellant.—Where one person enters into a contract with another to pay money to a third, and such third person is the only party interested in the payment, he can release the promisor or compel performance: Edmundsen's Est., 259 Pa. 429; Adams v. Kuehn, 119 Pa. 76.

*Reuben J. Butz,* of *Butz & Rupp,* for appellee.—The exception to the general rule that third parties cannot recover on contracts is correct, as stated by appellants, but, having no beneficial interest in the contract, they have not brought themselves within the exception: First M. E. Church, etc., v. Eisenberg, 246 Pa. 221; Board of Education v. Massachusetts Bonding & Ins. Co., 252 Pa. 505.

OPINION BY HENDERSON, J., March 3, 1922:

The plaintiff's case rests wholly on the agreement attached to the statement of claim. The second paragraph of the statement avers that by the terms of that agreement the defendant, as one of the parties of the first part, in consideration of the promises of the remaining parties of the first part, agreed to pay to the plaintiff the sum of $1,000, to be applied by it to the ends and purposes outlined and designated in said agreement. We must turn then to the contract to ascertain the rights of the plaintiff. It will be seen at a glance that the lat-

ter is not named as a party to the contract: it did not
sign it; nor is there an express agreement that the de-
fendant shall pay the sum named to the plaintiff. The
parties of the first part are six in number; the parties of
the second part are four in number. The preamble re-
cites that the parties to the contract and three other per-
sons, now deceased, were members of a joint stock com-
pany, known as the Blue Valley Slate Manufacturing
Company, Limited; that the operations and the business
of that company had been abandoned for upward of a
year, and had been carried on under a leasehold
from the Blue Valley Slate Company, a corpora-
tion, which lease was still in effect. Then follows a
recital that certain members of the company, to wit,
those named as the parties of the first part, "are willing
to resume operations at the aforesaid plant of the said
lessee, and to advance money to the amount of $1,000
each, to gradually reduce and pay certain debts now ex-
isting and created by the company before its cessation
of operations, and certain other members of the com-
pany, constituting the parties of the second part, are
either unable or unwilling to join the parties of the first
part in this proposed proposition." These recitals lead
up to the agreement which relates to a mode of conduct-
ing business with the plant and the application of any
profits earned by the parties of the first part. All of the
undertakings have relation to things to be done by the
first parties and the consent of the second parties to
such acts. In the event that there should be profits, the
first parties are to pay "as may be by them deemed most
expedient" certain debts of the Blue Valley Slate Manu-
facturing Company, Limited, as set forth in a schedule,
after which, all other indebtedness owing by the com-
pany, prior to cessation of operations, was to be paid.
The royalty was to be paid to the lessor of the plant,
under whose lease the Blue Valley Slate Company held
title. The parties of the second part promised that they
would not either jointly or severally demand any of the

royalty theretofore earned and due, or that might there-after be earned, and that they would not demand by suit or otherwise the payment of any certificates of indebtedness which they held against the company. L. H. Yeager, Thomas Johnson and Robert F. Muschlitz, who had been members of the joint stock company, were dead at the time this agreement was executed. The plaintiff's contention is that the contract was a mutual agreement among the parties of the first part to pay to the plaintiff $1,000 each, and that the facts bring the case within the principle that where one person enters into a contract with another to pay money to a third, or to deliver some valuable thing and such third party is the only one interested in the payment or the delivery, he can release the promisor from performance or compel performance by suit. There are many cases supporting this doctrine, and under appropriate facts it has been frequently applied. If we accept the contention of the appellant that the contract pleaded creates an obligation of the parties of the first part to pay money and that it was not made with reference to a preëxisting arrangement among the first parties for mutual contribution, we are unable to discover in the contract an undertaking of any of the parties to pay to the joint stock company the money referred to in the preamble. There are on the contrary expressions indicating that it was not the purpose so to do and for obvious reasons. The company had not been engaged in business for more than a year; it was indebted to a large amount and was financially embarrassed. What the parties to the contract apparently had in mind was the devising of a plan under which the company might be relieved from that embarrassment. That plan was to raise a working fund of $6,000 to be used in carrying on the business in the interest of the partners. Payment to the company would give no assurance of the continuance of the business. It does not appear that all of the creditors were parties to this contract—the lessor of the plant certainly was not, and if

the money were to be paid to the company, it would be liable to be appropriated at once by some of the creditors. The parties anticipated profits, not to be earned by the company, but by those who would undertake to continue the business, and these profits were to be applied not by the company, but by the parties of the first part and according to the purpose expressed. The language of the contract is: "The profits earned under this agreement by said parties of the first are by them to be used and applied to the following purposes and in the order hereinafter mentioned." The company had failed to prosecute the work successfully, and a few of those interested were willing to provide a fund with which they would endeavor to produce better results than had been attained under the company management. Provision was made for the reduction of the indebtedness, but this was not to be done by the company, but by the parties to the contract "as may be by them deemed most expedient." Certainly this did not indicate that the business was to be conducted by the company; it provides for management by the persons who were to raise the capital to conduct the business. The contracting parties had no authority to determine the order in which the debts of the company should be paid—the creditors and the company must be taken into account in such an arrangement. In this view of the contract, the prosecution of the business would be by the contributing members as partners. The legal consequences of the creation of such a partnership it is not necessary to consider, as our only inquiry is whether the contract creates a liability of the defendant and his cocontractors to the Blue Valley Slate Manufacturing Company, Limited.

As we view the contract, it does not admit of a construction which creates an obligation of the first parties to the plaintiff. The judgment of the court below was therefore properly entered. The judgment is affirmed.