## Mehl's Estate.

*Contracts—Parties—When third party may sue on contract.*

1. In order that a third party may maintain an action on a contract, he must be a party to the consideration or the contract must have been entered into for his benefit and he must have some legal or equitable interest in the performance.

*Wills—Joint will of husband and wife—Probate—Revocation—Contract—Parties—Enforcement of contract— Consideration.*

2. Where a husband and wife make a joint will, and, after the death of the husband, such will is probated as his will and no appeal is taken therefrom, the Orphans' Court, after the death of the wife and after the time for appeal has expired, cannot pass upon its validity.

3. Joint or reciprocal wills, in the absence of any express contract or agreement, are revocable by the survivor of the parties.

4. Joint wills made by husband and wife under a contract between them are enforced only in favor of the original parties to the contract, or, at least, in favor of parties who furnished some consideration.

5. Where a husband and wife make a joint will in consideration of their giving to each other a life interest in their respective estates with power to consume, with remainder over to certain legatees, and the wife survives her husband and makes a will excluding certain legatees mentioned in the joint will, such legatees cannot, at the audit of the wife's estate, claim payment of their legacies from her estate, if it appears that they in no way contributed any consideration to the contract under which the joint will was made; and such is the case, although the joint will charged liability on the estate of each of the parties to the will for damages to all legatees whose interests might be prejudiced by a breach of the contract.

6. So much of the assets before the court for distribution as came from the estate of the husband were awarded to his executors for distribution by them among the legatees entitled.

Exceptions to adjudication.   O. C. Phila. Co., July T., 1926, No. 2319.

### Mehl's Estate.

GEST, J., Auditing Judge.—Rosina Mehl died on July 3, 1925, unmarried and without issue, leaving a will, admitted to probate July 28, 1925, when letters testamentary were granted.

. . . . . . . . . . . . . . .

By her will, dated Sept. 6, 1923, the testatrix expressly revoked all former wills and codicils by her at any time theretofore made, directed her executors to pay her debts and funeral expenses, and bequeathed to Dora Schleicher her houshold furniture, clothing and jewelry, which are appraised at $50, and $3000 in cash; to Christine Seeger, $200; to Wilhelm Heinzelmann, $300; to George Groenbitter, $200; to Karl Mehl, $1000; and her residuary estate, real and personal, she gave and devised to seventeen persons, as follows: Rose Reich, Johanas Kronenbitter, George Kronenbitter, Margaret Radgaber, Jacob Spaeth, Karl Mehl (of Heichingen,. Hohenzoller, Germany), Karl Mehl (of Heilbron, Germany), Minnie Rapp, Marie Huber, Andreas Spaeth, Fritz Spaeth, Fritz Steinhilber, Carl Steinhilber, Paul Steinhilber, Marie Steinhiber, Clara Duerr and Emelia Kudler.

The question, as stated in the petition for distribution, for determination by the court is as follows:

The decedent, during the lifetime of her husband, joined with him in making a joint will, and part of the present estate came to decedent under that joint will at the death of her husband. The legatees under the joint will claim that distribution must be made under the joint will and not under the present one.

Rosina Mehl was the widow of Louis Mehl, who died Nov. 24, 1920. On Jan. 24, 1919, Louis Mehl and Rosina Mehl, his wife, made an agreement in writing, a copy of which is hereto annexed.

By this agreement, Louis Mehl, in consideration of $50 to him paid by Rosina Mehl and of the covenants and agreements of the said Rosina Mehl, did for himself, his heirs, executors and administrators, covenant, promise and agree, immediately upon the execution and delivery thereof, to make his last will and testament by a double will, with the said Rosina Mehl, and thereby devise and bequeath to the said Rosina Mehl for the term of her natural life all his property and estate, real, personal and mixed, without being accountable to any one whatsoever for the application or misapplication of any or all of it, by this meaning that the final heirs and others who might have an interest should have to take what was left, in proportion to the bequests thereinafter stated, if there should be anything left for them, without redress or recourse, and upon her decease the said Louis Mehl devised and bequeathed the same to the following: $1000 to Karl Mehl; one-half of the remainder to Bertha Duerr, Emilie Kottler, Karl Mehl, in addition to the above $1000, Friedrich Steinhilber, Karl Steinhilber, Paul Steinhilber, Marie Steinhilber, Bertha Heinzelmann, Julius Rapp, Karl Mehl and Ernestine Mehl; and the other half of the remainder to Rosie Bauer, $200, and the balance of the said other half to Margaretha Rathgeber, Maria Huber, Rosina Krug, Rosina Reich, Johanes Kronnenbitter, Johan George Kronnenbitter, Andreas Spaeth, Fritz Spaeth and Margaretha Spaeth in fee simple, and further covenanted, promised and agreed with Rosina Mehl, her heirs, executors and administrators, not to revoke, cancel, destroy, change, alter or modify the said will to be made by him in any way or to make any codicil or codicils thereto without the written consent of the said Rosina Mehl, and that in case of a breach of any of said agreements or covenants, his estate, upon his decease, should be liable to the persons thereby injured or affected for damages. And the said Rosina Mehl, in consideration of $50 to her in hand

paid by the said Louis Mehl, at and immediately before the making and execution of the agreement and of the covenants and agreements of the said Louis Mehl, did for herself, her heirs, executors and administrators, covenant, promise and agree, immediately upon the execution and delivery thereof, to make her last will and testament, by a double will, with the said Louis Mehl, and thereby devise and bequeath to the said Louis Mehl for the term of his natural life all her property and estate, real, personal and mixed, without being accountable to any one whatsoever for the application or misapplication of any or all of it, by this meaning that the final heirs and others who might have an interest would have to take what was left in proportion to the bequests hereinafter stated, if there was anything left for them, without redress or recourse whatever, and upon his decease to give and devise the same to the following: $1000 to Karl Mehl and the rest to dispose of in exact accordance with the covenants of Louis Mehl by him made in the said agreement, and she further covenanted, promised and agreed with Louis Mehl, his heirs, executors and administrators, not to revoke, cancel, destroy, change, alter or modify the said will to be made by her in any way or to make any codicil or codicils thereto, without the written consent of the said Louis Mehl, and that in case of a breach of any of the said agreements or covenants, her estate, upon her decease, should be liable to the persons thereby injured or affected for damages.

And on the same date, Jan. 24, 1919, the said Louis and Rosina Mehl executed a will, styled a double will, carrying out the terms of the said contract. This was followed by an agreement between the same parties, dated Sept. 8, 1920, a copy of which is hereto annexed, by which Louis Mehl agreed to make a codicil to their double will, correcting the name of one of the legatees, "Emilie Rottler," misnamed "Kottler," revoking the bequest made to Rosie Bauer of $200, revoking the bequest to Johan Georg Kronnenbitter, revoking the bequest of Margaretha Spaeth and adding to the remaining of the legatees, from which Rosie Sauer, Johan Georg Kronnenbitter and Margaretha Spaeth were removed, the name of Jacob Spaeth. And on the same date, Sept. 8, 1920, the said Louis and Rosina Mehl executed a codicil, styled "Codicil to Double Will," carrying out the terms of the said agreement by the execution of the codicil.

Louis Mehl having died on Nov. 24, 1920, the aforesaid double will and codicil to double will, dated, respectively, Jan. 24, 1919, and Sept. 8, 1920, were admitted to probate as the last will of Louis Mehl and codicil thereto on Feb. 1, 1921, and letters testamentary were granted to Charles Rathgeber and Charles Wessinger. The widow having elected to take under the will, the said executors filed their account, and the same was audited by Henderson, J., who, in his adjudication, filed May 29, 1923, said, *inter alia:* "Some question was raised as to whether the agreement was admissible in evidence in aid of and interpretation of the will. It was conceded, however, that, there being a valid contract to make a will, if the will as executed did not carry out that contract, then a recovery could be had under the terms of the contract;" and, after further discussion, Henderson, J., said: "It was conceded that, under the provisions of the will, codicil and contract to make a will, the life-tenant, the widow, had a power of consumption." And after further stating that the question submitted to him was as to whether the estate should be awarded to the life-tenant or to the trustees under the will, the said Auditing Judge concluded that the testator had given his widow a legal life estate, with power to consume, and had exempted her from giving security, and so the balance for distribution, amounting to $13,251.12, less tax at 2 per cent., was awarded

to Rosina Mehl for her natural life, in accordance with the provisions of the will and this adjudication.

Exceptions were filed by Clara Duerr et al. to the adjudication, on the ground that the Auditing Judge had erred in failing to award the balance of principal to the trustees named by the will to be held for the life of Rosina Mehl with power to consume on the part of the said Rosina Mehl as her necessities might require.

On June 21, 1923, the exceptions were dismissed for want of prosecution.

When the will of Rosina Mehl, executed by her on Sept. 6, 1923, is compared with the provisions of the double will and codicil, it appears that the following legatees are excluded from this last will of Rosina Mehl, viz., Bertha Duerr, Bertha Heinzelmann, Julius Rapp, Ernestine Mehl, Rosina Krug, each entitled under the double will to a share in the residue, and that Rosina Mehl added the following legatees, viz., Dora Schleicher, $3000; Christine Seeger, $200; Wilhelm Heinzelmann, $300; George Gronenbitter, or Groenbitter, $200, and a share in the residue; Minnie Rapp, a share in the residue; and Clara Duerr, a share in the residue. From the appearance slip of Messrs. Bossard and Geiger, however, it appears that Bertha (or Berta) Duerr and Clara Duerr are one person. George Gronenbitter, or Groenbitter, or Kronenbitter, given $200 and a share in the residue under the will of Rosina Mehl, is probably Johan Georg Kronenbitter, named in the double will of Louis and Rosina Mehl.

It further appears from the stipulation of counsel, hereto annexed, that the balance of $13,251.21, awarded by the adjudication of Henderson, J., filed on May 29, 1923, in the account of the executors of Louis Mehl, deceased, to the said Rosina Mehl for the term of her life with power to consume, was composed as follows:

```
Cash .............................................$1251.12
Bond and Mortgage on No. 1541 North 30th Street......... 1500.00
  ”       ”        ”      ”   ”  721 Schiller Street............. 1000.00
  ”       ”        ”      ”   ”  723 Schiller Street............. 1000.00
  ”       ”        ”      ”   ”  5232 Jefferson Street.......... 2200.00
  ”       ”        ”      ”   ”  17 South Redfield Street....... 1500.00
  ”       ”        ”      ”   ”  19 South Redfield Street....... 1500.00
  ”       ”        ”      ”   ”  2961 North Bailey Street....... 1700.00
  ”       ”        ”      ”   ”  860 North 50th Street......... 1600.00
```

which cash and mortgages were duly paid and assigned to Rosina Mehl by the executors of Louis Mehl, deceased, on July 13, 1923.

When Rosina Mehl died, on July 3, 1925, there remained still standing in her name the following mortgages:

```
No. 5232 Jefferson Street.................................$2200
 ”  1541 North 30th Street................................ 1500
 ”  2961 Bailey Street.................................... 1700
 ”   860 North 50th Street................................ 1600
```

and the other mortgages had been paid off to Rosina Mehl and satisfied by her as follows:

```
                                              Date of Satisfaction
No. 721 Schiller Street............$1000............Oct. 30, 1923
 ”  723 Schiller Street............ 1000............Oct. 30, 1923
 ”   17 South Redfield Street...... 1500............April 1, 1925
 ”   19 South Redfield Street...... 1500............Aug. 14, 1925
```

### Mehl's Estate.

And it further appeared from an analysis of the bank account of Rosina Mehl that, on Oct. 30, 1923, when she satisfied the two Schiller Street mortgages of $1000 each, she deposited the sum of $2071.67 in her bank account and withdrew $1200, which corresponds with an investment made by her in a mortgage of $1200 on No. 3041 Baltz Street, which she continued to own at the time of her death. The proceeds of the other mortgages paid off to her cannot be definitely traced into the other investments made by her, a schedule of which is set forth in the stipulation of counsel, but it does appear that her bank balance always exceeded the amounts received by her in satisfaction of the mortgages which she got from her husband's estate, from which it may be inferred that the proceeds of these mortgages were not consumed by her in her lifetime. The cash, amounting to $1251.12, paid to Rosina Mehl by the executors of Louis Mehl on July 13, 1923, does not appear, from the stipulation of counsel and the schedule of her bank account, to have been therein deposited or traced into another investment, and I, therefore, find that Rosina Mehl converted this sum to her own use and consumed the same under her power so to do. The unconsumed part of the estate of Louis Mehl, being the mortgages above mentioned, amounted, therefore, to $12,000, to which should be added the interest received thereon by the executors of Rosina Mehl accruing after her decease.

It was argued, in behalf of the legatees under the so-called double will, that it is immaterial whether, by reason of the irrevocability of the contract, the subsequent will of Rosina Mehl should not have been probated, or, the same having been probated, distribution should be made under the contract, as the Orphans' Court, irrespective of the form of procedure, will make an equitable award and that the legatees under the contract and double will have a definite standing to enforce the provisions of the contract in their favor.

It is very clear that the only will of Rosina Mehl before the court is her will of Sept. 6, 1923, admitted to probate on July 28, 1925. The instrument called the double will of Louis Mehl and Rosina Mehl was admitted to probate as the will of Louis Mehl, alone, on Feb. 1, 1921. Of course, it could not be probated as the last will of Rosina Mehl, as she was still living. Her own will having been admitted to probate, as above stated, on July 28, 1925, and no appeal having been taken from the decree of probate, this court has no jurisdiction to pass on the validity of the double will in question. The probate of her will of Sept. 6, 1923, by the Register of Wills is conclusive: Section 16(a) of the Register of Wills Act of June 7, 1917, P. L. 403, which is, in effect, section 1 of the Act of June 25, 1895, P. L. 305, which, in turn, amended the Act of April 22, 1856, P. L. 533, by reducing the period for appeal. The last-mentioned act has been interpreted in numerous cases which have uniformly held that the probate of a will is a judicial act, which, unappealed from, is conclusive of the fact that the will probated is the will of the testator: Stout v. Young, 217 Pa. 427; Wilson v. Gaston, 92 Pa. 207. Distribution must, therefore, be awarded according to the terms of the separate and individual will of Rosina Mehl, unless the legatees under the joint will can, in some way, claim the benefit of the contract between Louis Mehl and his wife, Rosina.

The authorities appear to be in accord on the point that joint or reciprocal wills, in the absence of any express contract or agreement, are revocable by the survivor of the parties: Cawley's Estate, 136 Pa. 628; Vogel's Estate, 44 Pitts. L. J. 80; Wilson v. Gordon, 53 S. E. Repr. (South Carolina) 79, and Edson v. Parsons, 50 N. E. Repr. (N. Y.) 265. Where, however, there has been a prior agreement between the parties to make reciprocal wills, each in consideration of the other, or upon other valuable consideration, the question

of revocation by the survivor becomes entangled with the rules governing specific performance in equity, and, where the survivor has executed a later will in revocation of the mutual will, the right of third party beneficiaries to set up the original agreement in defeat of the later or revoking will.

Contracts to make, or not to alter, a will are generally enforced in equity by fastening a trust on the property which was the subject of the contract to devise, and by requiring the devisee to make a conveyance in accordance with the terms of the contract: Kine v. Farrell, 75 N. Y. Supp. 542, and White v. Winchester, 92 Atl. Repr. 1057. But in all such cases the contracts are enforced in favor of original parties to the contract only, or, at least, parties who furnished some consideration therefor. McGinley's Estate, 257 Pa. 478, was decided on the latter ground, rather than on the right of third parties to sue on the original agreement to make a mutual will.

As to whether or not third party beneficiaries, who furnished no consideration for the agreement, acquire any rights thereunder which the survivor cannot, by a subsequent individual will, destroy, there are, indeed, *dicta* in cases like Rhodes's Estate, 277 Pa. 450, that such revocation could not preclude the rights of such third parties, either to compel specific performance of the contract to make the will or to recover damages for breach of such contract, but equity would recognize almost any substantial circumstances to defeat specific performance in order to protect the individual in his right to devise his estate according to his own desire. For instance, the survivor might live twenty or thirty years after the death of his co-testator, or circumstances might arise which would make it intolerable for the survivor to be compelled to devise a share in his estate to one of the agreed legatees in remainder, or his property might accumulate to an extent unforeseen at the time the mutual will was executed. Equity would, in my opinion, hold mutual wills revocable under such circumstances; in the first two cases, because of the unreasonableness of enforcing the suspension of a man's right to bequeath his property according to his own wishes, despite the changes of his mind and circumstances during twenty or thirty years; and in the third case, because of the inadequacy of the original consideration to control the devise of the unexpected accumulation of property. These considerations acquire additional strength against third parties claiming under the agreement, who were strangers thereto and who furnished no consideration therefor, and particularly where, as here, the contract appears to be for the benefit of the contracting parties themselves, primarily, and for the benefit of the third parties in remainder only, and where the property which is the subject of the agreement did not in any sense belong to such third parties or was not transferred to the use of such third parties: Guthrie v. Kerr, 85 Pa. 303.

In the case at bar, however, the claimants under the double will and contract to make such will rely chiefly on the right of third parties to recover damages against the estate of the survivor for breach of the contract to abide by the terms of the double will.

By the terms of this double or reciprocal will, each of the parties thereto, on the death of the other, takes a life estate in the property of the decedent with the absolute right to consume the principal. It was within the contemplation of both parties, then, that the combined estates of the co-testators might be so depleted by the uses to which the survivor might subject them that the gifts in remainder could never take effect. Such an agreement certainly should not be construed as a contract for the benefit of the agreed legatees in remainder, which would enable them to recover against the estate of the survivor the value of any specific legacy adeemed in the lifetime of the

survivor, or the amount of any pecuniary legacy revoked by a subsequent will or codicil: Donaldson's Estate, 1 Dist. R. 235. And this is so despite the clause in the contract whereby each party charged his or her estate with liability for damages to all legatees whose interests might be prejudiced by said party's breach of contract. Such clause is inconsistent with the expressed intention of the parties to give to each, surviving, the absolute right to consume the estate of the other in any way conceivable without accounting to any of the legatees in remainder, and it is this latter purpose which dominates the agreement and must be regarded as controlling and superseding any provision that is inconsistent therewith. Had Rosina chosen to transfer the entire estate (including that which she received from her husband under the double will) by gifts *inter vivos* to the legatees to whom she devised her separate estate by her single or last will, nothing in the agreement or in the double will could have availed to prevent her from so doing. Apparently, neither party intended by the agreement to limit the survivor in the disposition of the combined estates to any scheme of distribution which might prove distasteful to or against the will of such survivor. It is most natural to conclude, then, that it was not the intention of either party to the agreement to require the survivor to devise his or her separate estate in any manner that might, in the indeterminate interval between their deaths, during which time no restraint whatever was imposed on the survivor's disposition of the combined estates, and in such changes of circumstances as could not have been anticipated when the contract was executed, become repugnant to the natural desire of the survivor. But even if such were the intention of the contracting parties, it is doubtful if effect could be given thereto in derogation of the right of the individual to devise his property according to the voluntary, unrestricted dictates of his wishes.

My conclusion, therefore, is that Rosina Mehl at the time of her decease held, as trustee, so much of the estate of Louis Mehl as then remained unconsumed; that is, of the assets now before the court for distribution, the mortgages or cash representing them in the aggregate sum of $12,000, and this should be awarded, together with any interest accruing thereon since her decease, to the executors of Louis Mehl, deceased, for distribution by them among the legatees entitled.

*Harvey Geiger* (of *Bossard & Geiger*), for exceptants.

*Thomas F. Gain*, contra.

STEARNE, J., Nov. 4, 1927. — The only question for our determination is whether the exceptants, as creditors, may maintain an action on the contract between the decedent and her husband, when they are not parties to the agreement and are strangers to the consideration.

We are of opinion that they may not.

In order for a third party to maintain an action, he must be a party to the consideration, or the contract must have been entered into for his benefit and he must have some legal or equitable interest in the performance: 13 Corpus Juris, 709, § 817; Blue Valley Co. v. Yeager, 78 Pa. Superior Ct. 533; First M. E. Church v. Isenberg, 246 Pa. 221; Erie v. Diefendorf, 278 Pa. 31.

Great reliance was placed upon McGinley's Estate, 257 Pa. 478. There, the agreement was upheld because the beneficiaries themselves furnished or performed the consideration. In Rhodes's Estate, 277 Pa. 450, there was no question concerning intervening rights of third persons.

Mehl's Estate.

As the Auditing Judge has so accurately and clearly defined the law concerning joint or mutual wills and contracts with respect thereto, we feel that we cannot profitably add anything further thereto.

All of the exceptions are dismissed and the adjudication is confirmed absolutely.

HENDERSON, J., did not sit.