# Rhodes's Estate.

*Wills—Husband and wife—Joint will—Revocation—Contract—Survivorship—Property held jointly.*

1. Property, real and personal, held jointly in the names of husband and wife belong to the survivor.

2. Where a husband and wife execute jointly a paper testamentary in form, which they designate a will, by which they appoint executors, and which is to take effect after death, such paper is a will and revocable, in the absence of any proof that it was made in pursuance of a contract.

3. The fact that, by such writing, a part of the property is directed to be given over after the death of the survivor to the husband's relatives, and a part to the wife's relatives, does not of itself change the nature of the instrument, in the absence of a contract.

*Will — Decedents' estates — Election by writing to take against will—Time—Distribution—Practice, O. C.*

4. Where a widow elects in ample time to take against a joint will made by herself and husband, if any items of income have come into her possession to which under her election she is not entitled, such items can be adjusted on distribution.

Argued April 18, 1923. Appeal, No. 6, Jan. T., 1924, by Edgar N. Rhodes et al., from decree of O. C. Adams Co., directing securities to be delivered to Harriet R. Rhodes, widow, in estate of Frederick Rhodes, deceased. Before WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Petition of Harriet R. Rhodes, widow, for citation. Before MCPHERSON, P. J.

The opinion of the Supreme Court states the facts.

Decree for petitioner. Edgar N. Rhodes et al., heirs, appealed.

*Error assigned* was decree, quoting it in part, and referring to page of record.

*C. E. Stahle,* for appellants.—The survivor of a joint will may not revoke it: Johnson v. McCue, 34 Pa. 180; Frazier v. Patterson, 243 Ill. 80, 27 L. R. A. (N. S.) 508, citing English and American cases, it being cited in Mc-Ginley's Est., 257 Pa. 478; see also Young's Est., 202 Pa. 431.

It is now too late for Mrs. Rhodes to claim against her agreement: McAuley's Est., 184 Pa. 124; Hollis v. Hollis, 254 Pa. 90.

*Wm. Hersh,* for appellees, cited: Cawley's Est., 136 Pa. 628; Hoffert's Est., 65 Pa. Superior Ct. 515.

OPINION BY MR. JUSTICE WALLING, May 7, 1923:

On October 15, 1913, Frederick Rhodes and his wife, Harriet R. Rhodes, of Adams County, made and exe-

cuted a last will, which, so far as here important, is as follows: "We, F. and H. R. Rhodes......do make and publish this our last will and first we give and be quith all our real estate and personal property to either one that is left during his or her life......after our deaths the one-half goes to my brothers and sisters or their heirs and the other half goes to her brothers and sisters or their heirs      if either one sees proper they can sell both farms if either of us sees proper can devid som of the money      we apoint John Waybright and Lewis Rhodes to sttel up our Estate after our deaths." The testators were old and childless. Mr. Rhodes died January 1, 1921, and the above in part quoted writing was duly brought forward and probated as his will. His personal estate was appraised at $4,341.65 and his real estate (two farms) at $17,000. Aside from that Mr. and Mrs. Rhodes held in their joint names securities, consisting of bonds, stocks, etc., to the amount of $27,-332.35. When the will was read Mrs. Rhodes expressed satisfaction with it but made no election to take thereunder and about eight months later decided to take against the will, and her election to that effect was duly made as the statute provides. Meantime, the executors had secured possession of the joint securities above mentioned, which they refused to turn over to Mrs. Rhodes and thereupon she petitioned the orphans' court for an order upon them to do so. An answer was filed, also a replication, and testimony was taken. Pending this proceeding one of Frederick Rhodes' heirs, acting for himself and other heirs, intervened as a respondent, and, from a decree of the orphans' court, granting petitioner the relief sought, brought this appeal.

Property, real or personal, held jointly in the names of husband and wife belongs to the survivor (Sloan's Est., 254 Pa. 346; Klenk's Est. (No. 1), 210 Pa. 572), therefore Mrs. Rhodes' claim to the joint securities is ostensibly well founded. The lower court properly finds that the testimony fails to show any contract between

Mr. and Mrs. Rhodes as to the disposition of their property, unless evidenced by the will, and the question is, Does it exhibit a binding, irrevocable contract? The rule as to the power of revocation of a joint or mutual will is stated in Thompson's Law of Wills, section 470, as follows: "As a general rule a joint or mutual will may be revoked by either of the co-makers, provided it was not made in pursuance of any contract. But where such will has been executed in pursuance of a compact or agreement entered into by the testators to devise their property to certain designated beneficiaries, subject to a life estate or other interest in the survivor, it is generally held irrevocable when, upon the death of one, the survivor avails himself of the benefits of the devise in his favor. But, in the absence of a valid contract, the mere concurrent execution of the will, with full knowledge of its contents by both testators, is not enough to establish a legal obligation to forbear revocation;" and, as stated in Edson v. Parsons et al., 155 N. Y. 555 (50 N. E. 265): "It is not sufficient [to prevent revocation] that there are wills simultaneously made, and similar in their cross provisions, but the existence of a clear and definite contract must be shown, either by proof of an express agreement, or by unequivocal circumstances;" and no such contract appears in the present case, for the language here is testamentary rather than contractual. That the writing in question, while inartificially drawn, is a will cannot be doubted, for it is so designated by the parties, is testamentary in form, makes disposition of property to take effect after death and appoints executors; but we do not agree with appellant that it exhibits an irrevocable contract for the final disposition of the makers' estates. It is perfectly evident Mr. and Mrs. Rhodes thought they were making a will and they are presumed to have known that as such it was revocable, while it does not appear they intended otherwise. If the writing in question is a valid contract, it is not easy to see how a husband and wife could make a joint will, each

to the other for life and then over to others, that would not be so construed. That a part of the property is given over to his relatives and a part to hers does not of itself change the nature of the instrument. Had the testators left two children and had the will said "after our deaths the one-half goes to our son and the other half goes to our daughter," it could not be held that an irrevocable contract was created, nor can the construction be different because the gifts over are to collateral relatives. A clear contract between husband and wife must appear to deprive the latter of her rights under the law in their joint estate or in that of the former. The instant case is similar to Hoffert's Est., 65 Pa. Superior Ct. 515, where, under like conditions, it is held a joint will made by husband and wife did not prevent the surviving husband from making a different testamentary disposition of his estate. And while Cawley's Est., 136 Pa. 628, is not directly in point, it tends to support the decree here appealed from; and see Wright's Est., 155 Pa. 64. We will not attempt to distinguish or harmonize the cases called to our attention from other jurisdictions, but an extended discussion thereof appears in the note of Frazier v. Patterson (243 Ill. 80), 27 L. R. A. (N. S.) 508. The rule stated in McGinley's Est., 257 Pa. 478, 483, and other cases, that one may make a valid contract to dispose of his property by will, is well settled; what we hold is that the present case discloses no such contract.

Furthermore, as the widow takes against the will she derives no benefit thereunder; in other words, she gets what she would have had without a will. True, some of the securities were taken in their joint names after the date of the will but, so far as shown, not because of it; in fact, that was a mere continuation of their former habit. If the widow secures an undue share of the property, which is not clear, as she brought her husband a considerable sum, the joint will is not responsible for it.

The widow's election to take against the will was made in ample time; if theretofore any items of rent or other

income had come into her possession, to which under her election she is not entitled, it can be adjusted on distribution: Beck's Est., 265 Pa. 51. The situation is correctly stated in the final paragraph of the opinion of the orphans' court, viz: "We therefore conclude that the paper executed October 15, 1913, has merely the present effect of the will of Frederick Rhodes, operative on his separate estate, and did not create a binding obligation on the part of Mrs. Rhodes in relation to the disposition made by her of her estate as the survivor, nor did it reduce her rights to take absolutely the securities upon the death of her husband which were held by her and her husband as tenants by entireties, upon the death of her husband, and did not limit her right in the securities, as the survivor, to simply a life estate therein."

The decree, ordering the executors to turn over to the petitioner (Mrs. Rhodes) the securities held jointly by herself and her late husband, was rightly made and is affirmed at the cost of the Frederick Rhodes estate