Swenk Estate.

Argued September 28, 1954. Before RHODES, P. J., HIRT, ROSS, GUNTHER, WRIGHT, WOODSIDE and ERVIN, JJ.

*Charles W. Eaby, Jr.,* with him *Charles W. Eaby, Sr.,* for appellants.

*John I. Hartman, Jr.,* with him *F. Lyman Windolph* and *Windolph & Johnstone,* for appellees.

OPINION BY ERVIN, J., November 9, 1954:

This is an appeal from a decree of the Orphans' Court of Lancaster County dismissing exceptions to an adjudication filed in the estate of Alice Swenk, deceased. At the audit the appellants claimed the entire balance for distribution as residuary legatees under the decedent's will. The court below, after an award to the Commonwealth of Pennsylvania for old age assistance and payment of transfer inheritance tax, awarded the balance in equal shares to appellees as third party beneficiaries under a contract between the decedent and Elizabeth Fisher.

The facts are these: In the year 1950, and for many years prior thereto, Alice Swenk lived in the home of Elizabeth Fisher at 424 North Charlotte Street in the City of Lancaster. Both ladies were advanced in years and in poor health. They were not related by blood or affinity. Elizabeth Fisher was a childless widow. Her nearest relatives were a nephew, Ray H. Ulmer, who predeceased her, his wife, Jeanette B. Ulmer, and their daughter, June D. Ulmer. Alice Swenk was unmarried and had no known relatives. On November 28, 1950 Miss Swenk and Mrs. Fisher executed wills in the Charlotte Street residence in the presence of F. Lyman Windolph, Esq., who had previously acted as Mrs. Fisher's attorney, Dr. Frank A. Veri, physician of both Miss Swenk and Mrs. Fisher, Jeanette B. Ulmer, widow of Ray H. Ulmer (who died June 1, 1951), and Edward J. Phelan and Leah Mae Phelan, his wife. In the will of November 28, 1950 Miss Swenk gave her entire es-

tate to Mrs. Fisher with the provision, however, that if Mrs. Fisher did not survive her, her estate was to go in equal shares to Ray H. Ulmer, Jeanette B. Ulmer and June D. Ulmer, their daughter, or to the survivor or survivors of them. Mrs. Fisher in her will devised her Charlotte Street residence to Ray H. Ulmer and Jeanette B. Ulmer, and bequeathed her residuary estate to Ray H. Ulmer, Jeanette B. Ulmer, June D. Ulmer and Miss Swenk in equal shares and should any of them predecease her to the survivor or survivors of them. On October 4, 1951 Miss Swenk executed another will wherein she bequeathed her entire estate to Edward J. Phelan and Leah Mae Phelan in equal shares. Mrs. Fisher died on October 20, 1951 and her will was probated on October 24, 1951. Her estate consisted of the Charlotte Street property, appraised for transfer inheritance tax purposes at $7,500.00, and personal property of approximately $16,840.00. Miss Swenk died on November 14, 1951. A caveat against the probate of her will of October 4, 1951 was filed by Mrs. Ulmer but the caveat was dismissed and probate of this will as Miss Swenk's last will and testament was directed by the Orphans' Court of Lancaster County. At the audit of the first and final account of the executor of Miss Swenk's will of October 4, 1951 Jeanette B. Ulmer and June D. Ulmer claimed the balance for distribution as third party beneficiaries under an oral contract which they alleged was entered into by Miss Swenk and Mrs. Fisher shortly before November 28, 1950. The court below found as a fact that Mrs. Fisher and the decedent had entered into an oral contract for the execution of mutual or reciprocal wills; that the wills of November 28, 1950 had been executed by the parties in performance of the terms of the agreement; and that the execution by Miss Swenk of another will on October 4, 1951 was in

violation of the terms of the agreement. On the basis of these findings the court below entered the decree of distribution which is presently challenged by the appellants.

The question involved in this case is whether the evidence is sufficient to sustain the finding of the court below that a contract was made for the execution of mutual, irrevocable wills.

Contracts for the execution of mutual or reciprocal wills which are to be irrevocable are valid when properly proved, and they are enforced in most jurisdictions. The rule is stated in *McGinley's Estate,* 257 Pa. 478, at page 483, 101 A. 807, at page 808, where our Supreme Court said: "It is well settled that one may enter into a valid contract to dispose by will of his property, real or personal, in a particular way, and that such will is irrevocable and the contract will be specifically enforced. There are many examples of the recognition of this doctrine in this State and other states: Cawley's Est., 136 Pa. 628; Smith v. Tuit, 127 Pa. 341; Wright's Est., 155 Pa. 64; Shroyer v. Smith, 204 Pa. 310; Lewallen's Est., 27 Pa. Superior Ct. 320; Park v. Park, 39 Pa. Superior Ct. 212; Frazier et al. v. Patterson et al., 27 L.R.A. (N.S.) 508, and notes. In Thompson on Wills, Section 28, the learned author says: 'Mutual wills, that is, where two persons execute wills reciprocal in their provisions, but separate instruments, may or may not be revocable at the pleasure of either party, according to the circumstances and understanding upon which they were executed. To deprive either party of the right to revoke such mutual wills, it is necessary to prove such wills were executed in pursuance of a contract or a compact between the parties and that each is the consideration for the other.' When such contract has been proved, the will becomes a writing containing the terms of the agree-

ment, and satisfies the statute of frauds: Shroyer v. Smith, 204 Pa. 310." Furthermore, where the wills on their face do not express the terms of the contract, in order to sustain the contract there must be proof aliunde the wills, and such proof must be definite, certain, clear and convincing. *Culhane's Estate,* 133 Pa. Superior Ct. 339, 2 A. 2d 567.

Appellants contend there was insufficient testimony produced to show that the wills were irrevocable and in support of their contention rely on *Culhane's Estate,* 133 Pa. Superior Ct. 339, 2 A. 2d 567, which held inter alia that the testimony in the case was "clearly insufficient to support a finding that a contract was made for the execution of mutual, irrevocable wills." However, in *Culhane's Estate,* supra, the only evidence offered to establish the making of a contract was that of Emma Sliter who testified that she had been a subscribing witness to identical wills of the decedent and her husband. This Court stated, at page 349: "The testimony of Miss Sliter throws no light upon what actually passed between Michael Culhane and Catherine Culhane when the wills were made. Her testimony consists only of her interpretations of their statements and actions."

In the instant case the uncontradicted testimony discloses that in July, 1950 both Mrs. Fisher and Miss Swenk were in poor health and consulted their physician, Dr. Frank A. Veri, about making wills. Dr. Veri testified that Mrs. Fisher desired to have her estate go to the Ulmer family, but if she predeceased Miss Swenk, ". . . she would like to see that Miss Swenk had adequate food and shelter." He suggested "to Mrs. Fisher that she draw up a will in which she gave, that is of her personal estate, that she would give equal shares to the Ulmer family and Miss Swenk, in the event she preceded Miss Swenk in death. At that time

I suggested that Miss Swenk draw up another will, which would, in my opinion, interlock with Mrs. Fisher's will, and Miss Swenk's will was to state, in the event she preceded Mrs. Fisher, her estate would go to Mrs. Fisher; in the event she followed Mrs. Fisher, her estate would come back to the Ulmer family." When questioned as to what Miss Swenk and Mrs. Fisher said concerning this suggestion Dr. Veri replied: "These ladies agreed to it, that proposal, and, following that, the interlocking wills were drawn by you." (Mr. Windolph) On July 6, 1950, in response to a call from Mrs. Fisher, Mr. Windolph went to her home, where in Miss Swenk's presence Mrs. Fisher stated she wanted to make a new will leaving ". . . everything she had, to the Ulmers, but that she nevertheless wanted to do something if she could for Miss Swenk." Nothing definite was done in connection with the preparation or execution of the wills at that time. However, shortly before November 28, 1950 Mr. Windolph received instructions from Dr. Veri and Mrs. Ulmer to prepare the wills for Mrs. Fisher and Miss Swenk. When the wills were prepared Mr. Windolph returned to the Fisher home, where, in the presence of Miss Swenk, Mrs. Fisher, Dr. Veri and Mrs. Ulmer he read both wills in their entirety. When he then asked them whether the wills met with their approval he testified: "They both said the wills did meet with their approval, and that the wills were in conformity with what they had discussed, or what they had agreed on—I am not absolutely certain what words were used."

From this testimony it is clear that Mrs. Fisher and Miss Swenk agreed, in the presence of Dr. Veri and Mrs. Ulmer, that the survivor would bequeath her property in accordance with the wills made to effectuate their agreement. These mutual promises, made by

the parties in the presence of witnesses, constituted an enforceable contract. *Gredler Estate,* 361 Pa. 384, 65 A. 2d 404. Furthermore, the circumstances under which the wills were executed fully support the finding that Mrs. Fisher and Miss Swenk entered into an agreement to execute mutual wills which were intended to be irrevocable. These circumstances are well summarized by the court below as follows: "On November 28, 1950, Miss Swenk's sole assets consisted of cash of $1,000.00 (contained in an envelope in Mrs. Fisher's safe deposit box and subsequently acquired by the Commonwealth in an attachment execution proceeding) and the insurance policy previously mentioned. Both ladies were advanced in years and in poor health. While the Ulmer family was the primary object of Mrs. Fisher's benefaction, she was concerned with the plight of Miss Swenk in the event she predeceased her. She wanted to provide for Miss Swenk, but she was unwilling to do so without Miss Swenk naming the Ulmers as the benefactors of her will."

Decree affirmed; costs to be paid by appellants.