383 A.2d 914

**ESTATE of Olive May KESTER, Deceased.**

**Appeal of Clarence Walter KESTER.**

Supreme Court of Pennsylvania.

Submitted Jan. 17, 1978.

Decided March 23, 1978.

George I. Puhak, Hazleton, for appellant.

Richard I. Bernstein, Falvello, Ustynoski, Giuliani & Bernstein, Hazleton, for appellees, Christ Church, United Church of Christ, Conyngham, Pa.

Before EGAN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

MANDERINO, Justice.

The issue in this appeal is whether Henry C. Kester and Olive M. Kester, husband and wife, in executing a joint will,

also entered into a contract in the same instrument whereby each gave up the right to revoke his or her testamentary disposition in the event one of them predeceased the other.

On July 6, 1955, Henry C. Kester and Olive M. Kester executed the following joint will. The pertinent paragraphs to which appellant directs our attention have been underlined.

## LAST WILL AND TESTAMENT

KNOW ALL MEN BY THESE PRESENTS, THAT

WE, HENRY CLAY KESTER and OLIVE MAY KESTER, husband and wife of 523 North Broad Street, West Hazleton, Luzerne County, Pennsylvania, being of sound mind, memory and understanding, do make, publish and declare the following as and for our last Will and Testament, hereby revoking and making void any and all former wills by us heretofore made.

Subject to the contingency hereinafter stated, I, the said HENRY CLAY KESTER, do hereby give, devise and bequeath all my estate, real, personal or mixed, of which I may die seized or possessed, to my wife, OLIVE MAY KESTER, her heirs and assigns, absolutely and forever, and I hereby appoint her sole executrix of this, my last Will and Testament.

Subject to the contingency hereinafter stated, I, the said OLIVE MAY KESTER, do hereby give, devise and bequeath all my estate, real, personal or mixed, of which I may die seized or possessed, to my husband, HENRY CLAY KESTER, his heirs and assigns, absolutely and forever, and I hereby appoint him sole executor of this, my last Will and Testament.

*In the event, however, that we shall both die as the result of a common accident or disease, we shall be deemed to have both died at the same time (even though there be a reasonable interval of time between our respective deaths), and in this event, or in the event either one of us survives the other, it is our wish and mutual under-*

*standing that we give, devise and bequeath our entire estate as follows*:

FIRST: All our estate we give, devise and bequeath to our beloved son, CLARENCE WALTER KESTER, absolutely and forever.

SECOND: We hereby nominate, constitute and appoint our son, CLARENCE WALTER KESTER, sole executor of this our last Will and Testament.

THIRD: In the event our son should die with issue said issue shall inherit the share, that is all of our estate, of their father.

FOURTH: In the event our son should predecease us, we give our furniture, jewelry and personal belonging to Mrs. Marie A. Miller.

FIFTH: In the event our son should predecease us without issue, we give, bequeath and devise the remainder of our estate to:

The Hazleton State Hospital;

The Phoebe Home at Allentown, Pennsylvania;

The Conyngham Reformed Church;  and

The Crippled Children Association of Hazleton, Pennsylvania, share and share alike, absolutely and forever.

We hereby nominate and appoint Mrs. Marie A. Miller of R.D. Sugarloaf, Luzerne County, Pennsylvania, sole executrix, of this our last Will and Testament.

*IN WITNESS WHEREOF, we have hereunto set our hands and seals this 6th day of July, A.D. 1955.*

(s) Henry C. Kester   (Seal)

(s) Olive M. Kester   (Seal)

Signed, sealed, published and declared by the above named testator and testatrix as and for their last Will and Testament in the presence of us who have hereunto subscribed our names at their request as witnesses thereto in the presence of said testator and testatrix and of each other.

Joan Watro

George I. Puhak

On November 6, 1960, approximately five years after the execution of the above will, Henry C. Kester died. Approximately eleven years later, on July 29, 1971, Henry C. Kester's widow, Olive M. Kester, executed the following last will and testament:

LAST WILL AND TESTAMENT

KNOW ALL MEN BY THESE PRESENTS, THAT I, OLIVE M. KESTER, of 523 North Broad Street, West Hazleton, Luzerne County, Pennsylvania, being of sound mind, memory and understanding, do make, publish and declare the following as and for my last will and testament, hereby revoking and making void any and all former wills by me heretofore made.

FIRST: I direct that all my debts including my funeral expenses be paid soon after my departure from this world.

SECOND: I direct my Executor hereinafter named with the assistance of my sister, Marie A. Miller, to distribute my personal clothing to persons who may and will use same.

THIRD: I bequeath the income from my entire estate to my son, Clarence Walter Kester for and during his lifetime.

FOURTH: After the death of my son, I direct that my real estate be sold, preferably to Mr. Leo Dagostin, my good neighbor and benefactor, at a fair market value and I give, bequeath and device my estate as follows:

(a) I give the sum of Six thousand ($6,000) dollars to my sister, Marie A. Miller.

(b) I give the sum of One thousand ($1,000.00) dollars to my niece, Alice Tressler Hausman.

(c) I give the sum of Five thousand ($5,000.00) dollars to the Hazleton State General Hospital.

(d) I devise and bequeath the residue of my estate of every nature and wherever situate to the Northeastern National Bank of Pennsylvania, IN TRUST, for the following use and purpose:

To pay the net income therefrom to the United Church of Christ on Conyngham, Pennsylvania.

SIXTH: I hereby appoint my son, Clarence Walter Kester, Executor of this my last will and testament.

*IN WITNESS WHEREOF, I have hereunto set my hand and seal this 29th day of July, A.D. 1971.*

> (s) Olive May Kester   (Seal)
>
> (s) Olive May Kester

Signed, sealed, published and declared by the above named testatrix as and for her last will and testament in the presence of us who have hereunto subscribed our names at her request as witnesses thereto in the presence of said testatrix and of each other.

> (s) Linda Dale Henry
>
> (s) George I. Puhak

Olive M. Kester died on June 1, 1972, approximately ten months after executing the above will.

Upon petition of Clarence Walter Kester, son of Henry C. Kester and Olive M. Kester, the last will and testament of Olive M. Kester dated July 29, 1971, was admitted to probate and letters testamentary were issued to the son who had been named executor. The events which followed were described by the trial court as follows:

On April 18, 1973, Mr. Kester filed a First and Final Accounting and on June 1, 1973 an Addendum thereto. The account (amended at audit to be a First and Partial Account) came on for audit on June 5, 1973 and a Report of Audit was thereafter entered returning a balance of $39,185.04 to Mr. Kester for further administration and accounting. The Report of Audit was confirmed absolutely on July 30, 1973.

On July 26, 1974, Mr. Kester filed with the Court an "Amended Addendum" to his first account together with a Second and Final account and a petition for Adjudication. On the same date he also filed a Petition for Distribution, attached to which was a document entitled "Last Will and Testament", bearing the date of July 6, 1955, signed by this decedent and by her late husband, Henry C. Kester. The substance of the Petition for Distribution was that the 1955 instrument constituted a mu-

tual agreement between Mr. and Mrs. Kester for the disposition of their property, which became irrevocable upon the death of either. In the 1955 will, the parties bequeathed everything to each other and in the event one should have predeceased the other, then everything to their son, Clarence Walter Kester, absolutely. Henry C. Kester died prior to his wife's execution of the 1971 will. The petitioner, therefore, took the position that insofar as the provisions of Mrs. Kester's 1971 will differed from the provisions of the joint will of 1955 they were in derogation of Clarence Walter Kester's rights thereunder. Thus, even though the later document was properly admitted to probate, it was contended that distribution should be made according to the former; that is to say, to Clarence Walter Kester absolutely to the exclusion of the remaindermen.

In September of 1974, the Christ Church, United Church of Christ of Conyngham, filed Objections to the Petition for Adjudication and the Statement of Proposed Distribution, contending that the 1955 instrument was purely testamentary in nature, therefore irrevocable [sic] at will, and was, in fact, revoked by the 1971 will. At the same time, the Church filed Objections to the Second and Final account insofar as it claims credit in the amount of $13,638.17 for advances by the accountant "of his own money to be paid toward the bills for siding, new doors, etc. on decedent's single house". (Paragraph 6, page 3, Second and Final Account).

At the hearing on the petition for adjudication and petition for distribution, the parties agreed that they had no testimony to present and that the issue would be submitted on the record. Subsequently, the trial court denied the executor's petition for adjudication and also the petition for distribution. This appeal followed.

Appellant, Clarence Walter Kester, contends in this appeal that the joint will executed by his parents in 1955 contains within its four corners a contract whereby his mother and father gave up any right that each had to revoke the testamentary disposition that each had made in the joint will.

In Pennsylvania a joint will may be revoked by either of the co-makers provided the parties have not contracted to give up the power of revocation. The fact that the parties entered into a joint will is insufficient to establish a contract not to revoke. As we said in *Rhodes Estate,* 277 Pa. 450, 453, 121 A. 327 (1923):

" '[I]n the absence of a valid contract, the mere concurrent execution of the will, with full knowledge of its contents by both testators, is not enough to establish a legal obligation to forbear revocation.'

And, as stated in *Edson v. Parsons et al.,* 155 N.Y. 555, 50 N.E. 265:

'It is not sufficient [to prevent revocation] that there are wills simultaneously made, and similar in their cross-provisions, *but the existence of a clear and definite contract must be shown,* either by proof of an express agreement, or by unequivocal circumstances.' " (Emphasis added.)

Appellant contends that the 1955 joint will on its face expressed the terms of a contract whereby the parties to the joint will gave up their power of revocation. Appellant relies on two parts of the 1955 will. The primary portion of the joint will relied upon is the fourth unnumbered paragraph which reads as follows:

"In the event, however, that we shall both die as a result of a common accident or disease, we shall be deemed to have both died at the same time (even though there be a reasonable interval of time between our respective deaths), and in this event, or in the event either one of us survives the other, *it is our wish and mutual understanding* that we give and bequeath our entire estate as follows:

FIRST: All our estate we give, devise and bequeath our beloved son, Clarence Walter Kester, absolutely and forever."

We cannot agree that the language of the above paragraph expresses "a clear and definite contract" by the parties not to revoke the joint will. *Rhodes Estate, supra.*

It is true that the parties spoke of a "mutual understanding." These words, however, fall far short of being "unequivocal." Words more definite than those used in the present case have been held insufficient to show the existence of a clear and definite contract not to revoke. In *Hoffert's Estate,* 65 Pa.Super. 515 (1917) a joint will wherein the parties stated:

> "Whereas we have granted, and do hereby agree to and with each other . . ."

was held not to be sufficiently clear and definite to establish a contract not to revoke.

When it is claimed that someone has contractually limited his testamentary freedom, our standard of proof is a demanding one. In the case of a joint will in which extrinsic evidence is relied upon to prove the existence of a contract, we have held that the proof must be "clear and convincing." *Rhodes Estate, supra.* Likewise, in cases not involving joint wills, but involving the issue of whether there existed a contract to make a will or not to revoke a will, the rule has been that evidence of the existence of a contract must be clear and convincing. *Nakoneczny Estate,* 456 Pa. 327, 319 A.2d 893 (1974); *Vanjentic Estate,* 453 Pa. 1, 306 A.2d 300 (1973); *Fahringer v. Strine,* 420 Pa. 48, 216 A.2d 82 (1966).

Appellant also relies on the words of the will immediately before the signatures which are: "IN WITNESS WHEREOF, we have hereunto set our hands and seals this sixth day of July, A.D. 1955." Appellant argues that these words are generally used in contracts and not in wills. Although such a suggestion is made in *Herr Estate,* 400 Pa. 90, 161 A.2d 32 (1960), whatever the validity of the suggestion it has no applicability in the case before us. The same language was used by Olive M. Kester when she executed her 1971 will which obviously was not intended to be a contract since no other party was involved.

In the 1955 joint will the parties at no time used language indicating that the testamentary disposition of one was being made in consideration of the testamentary disposition of the other. We find that the language used in the

252

instrument is insufficient to definitely and clearly establish a contract between the parties to give up the power each had to revoke his testamentary dispositions.

Decree affirmed.

Each party pay own costs.