387 A.2d 851

ESTATE of Joseph T. IMBRUGLIA, Deceased.

Appeal of Catherine GATTONE, Joseph Caputi, Pasquale Caputi, Amelia Borsari, Matilda Giordano, Salvatore Villani, Lydia Musi, Marie Schultz, Thomas Mazzella, Carolyn Hager, Thomas Caputi, Alene Agnes Gambino, Karleen M. Sims, Anthony Giordano and Myrna Kelley.

Supreme Court of Pennsylvania.

Submitted Oct. 17, 1977.

Decided June 2, 1978.

George J. Giunta, Media, for appellant.

James F. Proud, Media, for appellee, Estate of Valentina Raschella, Dec'd.

R. Stuart Jenkins, Media, for appellee, Anthony Imbruglia.

Fronefield & deFuria, F. Martin Duus, Media, for appellee, Josephine Imbruglia.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION OF THE COURT

ROBERTS, Justice.

The Orphans' Court Division of the Court of Common Pleas of Delaware County determined that decedent Joseph Imbruglia did not enter into an enforceable agreement bar-

ring revocation of his May 19, 1965 will.[1] Appellants, beneficiaries under the 1965 will, appeal and we affirm.

On May 19, 1965, decedent and his first wife Elvira executed wills giving the surviving spouse the entire residue of the other's estate. The preamble of the will of decedent provided:

"I, JOSEPH T. IMBRUGLIA, of Drexel Park, County of Delaware, State of Pennsylvania, for and in consideration of a Will made this day by my wife, Elvira Mazzella Imbruglia, a signed copy of which is attached hereto, do hereby make my last Will and Testament, and revoke all Wills by me at any time heretofore made."

The will of decedent's first wife contained an identical preamble. Each will also provided that, if the named spouse predeceases the testator, property located at 404 North 63rd Street, Philadelphia, would be given to appellants, certain named relatives of Elvira, and the residue would be equally divided among appellants and certain named relatives of decedent.

Elvira died on November 22, 1965. On June 24, 1967, decedent married his surviving spouse Josephine. Before the 1967 marriage, decedent wrote on his 1965 will "not of any value" and "do not use this will." On September 10, 1967, decedent executed a new will. The new will, as the first, directed that the property in Philadelphia be given to the "nephews and nieces" of his first wife but also provided for his second wife and her daughter. On July 14, 1969, decedent executed a holographic codicil to the 1967 will, leaving one-half of his "entire estate" to Josephine, and the "interest of the fruits of [$]20,000" for so long as Josephine remains unmarried. Thus, by the terms of the 1967 will and its 1969 codicil, appellants are denied the share of the residuary estate they would have received under the 1965 will.

1. We hear this appeal pursuant to the Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P.L. 673, art. II, § 202(3), 17 P.S. § 211.202(3) (Supp.1977).

Decedent died on April 23, 1970 and the 1967 will and 1969 codicil were probated and letters testamentary were granted. The executors filed a first account, and, upon a stipulation of facts, the court dismissed the objection of appellants to the probate of the 1967 will and 1969 codicil. This appeal followed.

"A contract to make a will in a certain manner or to bequeath by will a specific monetary sum is recognized in Pennsylvania as valid." *Fahringer v. Strine Estate*, 420 Pa. 48, 52, 216 A.2d 82, 85 (1966); see *Beeruk Estate*, 429 Pa. 415, 241 A.2d 755 (1968). Mere execution of a will with provisions reciprocal to that of another does not, however, establish such a contract. *Kester Estate*, 477 Pa. 243, 383 A.2d 914 (1978); *Rhodes Estate*, 277 Pa. 450, 121 A. 327 (1923). As we stated in *Kester Estate*, supra:

" '[I]n the absence of a valid contract, the mere concurrent execution of the will, with full knowledge of its contents by both testators, is not enough to establish a legal obligation to forbear revocation;' and, as stated in *Edison v. Parsons, et al.*, 155 N.Y. 555 (50 N.E. 2650): 'it is not sufficient (to prevent revocation) that there are wills simultaneously made, and similar in the cross provisions, *but the existence of a clear and definite contract must be shown*, either by proof of an express agreement, or by unequivocal circumstances. . . .' "

477 Pa. at 250, 383 A.2d at 918, quoting *Rhodes Estate*, supra 277 Pa. at 453, 121 A. at 327. Accord, Uniform Probate Code § 2–701. Accordingly, in *Kester*, we found that the language "it is our wish and mutual understanding that we give and bequeath our entire estate" in a particular manner contained in the joint will of a decedent and her husband fell short of the "demanding" standard of proof of a contract not to revoke the will. Id. 477 Pa. at 250, 383 A.2d at 918.

Likewise, in *Hoffert Estate*, 65 Pa.Super. 515 (1917), the husband's and wife's joint will recited "whereas, we have agreed to and with each other, and do hereby will" certain property to a child of the wife (or children of the child) if

the property were not sold in the lifetime of the survivor. The wife died, the husband bequeathed the property to others, and specific performance was sought to compel conveyance of the property according to the joint will. The Superior Court found no enforceable agreement limiting the husband's power to revoke the will:

"There was no limitation imposed in the will as to its revocation, nor is there any contractual claim stated by which either is obligated to hold any interest for the use of any contemplated beneficiary. . . .

\*   ×   \*   \*   \*   \*

The words relied on by the appellees 'Whereas we have granted, and do hereby agree to and with each other,' are perfectly consistent with the construction that the paper was considered by them as their last will and testament. It is not suggested by the paper that they agreed to give the property to [the son], nor is there any consideration mentioned for such a conveyance. They did provide, 'We and each of us do devise the same unto [the son],' but this was not conclusive. The writing could have been destroyed, or any of the provisions revoked at any time prior to the death of Mrs. Hoffert. There was no change in the relation of the parties to the devised property by reason of the making of the will, no advantage or benefit was received by either that would be considered a consideration for a contract."

65 Pa.Super. at 519–20.

While Joseph and Elvira Imbruglia devised each of their estates in a reciprocal manner and state a "consideration" of the other's act of writing a similar will, neither writing demonstrates that Joseph or Elvira agreed to give up their right to revoke the wills. Further, no extrinsic evidence exists in the stipulated record proving an enforceable agreement between Joseph and Elvira. Appellants have therefore, just as in *Hoffert* and *Kester*, fallen short of their

burden of showing an agreement limiting decedent's right to revoke his 1965 will.[2]

Decree affirmed. Each party pay own costs.

2. Appellants also contend that, because they are specific legatees of real property by the terms of the 1967 will and its 1969 codicil, they are entitled to the net income from that property by reason of 20 Pa.C.S.A. § 3543(b) (1975). Appellants did not raise this issue, however, in their objections to the Proposed Statement of Distribution in the orphans' court and we therefore cannot consider the question raised for the first time on appeal. E. g., *McGrorey Estate*, 474 Pa. 402, 378 A.2d 855 (1977).