481 A.2d 658

**Thomas Merle CURRY**

v.

**ESTATE OF Betty T. THOMPSON, and James Robert McTavish, Sr., Executor of the Estate of Betty T. Thompson, Deceased, Appellants.**

Superior Court of Pennsylvania.

Argued May 15, 1984.

Filed Aug. 31, 1984.

Petition for Allowance of Appeal Denied Feb. 18, 1985.

Richard D. Gearhart, State College, for appellants.

Joseph J. Lee, Clearfield, for appellee.

Before CAVANAUGH, POPOVICH and HESTER, JJ.

POPOVICH, Judge:

This is an appeal from an Order of the Court of Common Pleas of Clearfield County entering summary judgment in favor of appellee, Thomas Merle Curry, after appellee instituted an action in assumpsit against the Estate of Betty T. Thompson, Deceased (Estate) and the Executor of the Estate, James Robert McTavish, Sr. We affirm, but modify the order as to damages.

Thomas Merle Curry is the son of John A. Thompson, deceased, and Thelma Irene Thompson. His parents divorced, and both remarried. Appellee was then adopted by his mother's second husband, and his name was changed from John A. Thompson, Jr. On an unspecified date in May of 1958, appellee's father and his second wife, Betty T. Thompson, executed allegedly mutual or reciprocal wills in which each devised his or her estate to the surviving spouse, or if the spouse did not survive by sixty (60) days, then to appellee in trust. Each manifested an intention that the wills were to remain unchanged. Betty T. Thompson (Decedent) executed a subsequent will in 1981 which revoked all prior wills and which was duly admitted to probate.[1] Appellee was not a beneficiary under this will, and he lodged a two-pronged attack on the dispositions of the latter will. First, he contested the probate of the 1981 will. This Court at *In Re; Estate of Thompson, deceased; Appeal of Curry*, 332 Pa.Super. 360, 481 A.2d 655 (1984), affirmed the Order of the lower court sustaining preliminary objections in the nature of a demurrer and dismissing the appeal. The case *sub judice* involves an action in assumpsit against the Estate and Decedent's Executor. Both parties moved for summary judgment, and the lower court entered an Order

---

1. John A. Thompson died in 1968, and, in accordance with the terms of his will, decedent received his residuary estate.

granting summary judgment in favor of appellee. This appeal followed.

The pertinent provision of the 1958 will of Decedent reads as follows:

"ITEM II: I give, devise and bequeath my entire estate, both realty and personalty, of whatever nature to my husband, John A. Thompson, if he survives me by sixty days. In the event of simultaneous death or death resulting from common disaster, with my husband, or if my husband dies within sixty days of my death, or if my husband predeceases me, then I direct that my entire estate shall be disposed of as follows:

A. I give to my trustee hereinafter named my entire estate, both realty and personalty, in trust to hold, invest and reinvest the same, collect the income, and after paying all expenses incident to the management of the trust, to use and apply as much of the net income and principal as may be necessary in the sole discretion of my trustee for the support, well-being and education of John A. Thompson, Jr., now known under adoptive name of Thomas Merle Curry, residing at 208 Marion Avenue, Punxsutawney, Pennsylvania, and as he arrives at the age of twenty-five, to pay him the principal and any accumulation of income, less such amounts as may have been expended for his benefit. If he should die without leaving issue before attaining the age of twenty-five, I direct that the balance of principal and income shall fall into the residue of my estate. I direct that payments for maintenance and education shall be made without the intervention of a guardian, and the receipt of such person as may be selected by my trustee to disburse such payments shall be a sufficient acquittance.

\* \* \* \* \* \*

ITEM V: This will being identical in its terms and reciprocal with a will made by my husband, John A. Thompson, dated this same day. *The wills are identical since it is our intention and we hereby agree that the wills are to remain unchanged upon consideration of*

*receiving more than our Intestate share of each others estate."* (Emphasis added)

The relevant portion of the will of John A. Thompson, deceased, was reciprocal.

■ The sole issue with which we are concerned is whether the lower court correctly entered summary judgment.

"In reviewing summary judgment, the court must accept as true all well-pleaded facts in the non-moving party's pleadings, giving the non-moving party the benefit of all reasonable inferences to be drawn therefrom. To uphold summary judgment, there must be not only an absence of genuine factual issues, but also an entitlement to judgment as a matter of law."

*Rybas v. Wapner*, 311 Pa.Super. 50, 457 A.2d 108 (1983). We note initially that

*"When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading* but his response, by affidavits or as otherwise provided by this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate,* shall be entered against him. Pa.R.Civ.P. 1035." *Marchese v. Marchese*, 457 Pa. 625, 628, 326 A.2d 321, 322 (1974).

However,

"Of course, mere failure to file counter affidavits does not assure that summary judgment will be granted to the moving party. The moving party's evidence must clearly exclude any genuine issue of material fact."

*Aimco Imports v. Industrial Valley Bank etc.*, 291 Pa.Super. 233, 238, 435 A.2d 884, 886 (1981). A motion for summary judgment must be granted in favor of a moving party if the other party chooses to rest on its pleadings, unless a genuine issue of fact is made out in the moving party's evidence taken by itself. *Carollo v. Forty-eight Insulation, Inc.*, 252 Pa.Super. 422, 381 A.2d 990 (1977).

The appellee, Thomas Merle Curry, filed a complaint in assumpsit averring that he is a third-party beneficiary under the alleged contract contained in the mutual or reciprocal wills of Decedent and John A. Thompson, which contract is allegedly irrevocable throughout the lifetime of the survivor. Appellants filed an answer and new matter which for the most part, claimed lack of knowledge or admitted appellee's allegations, except that appellants specifically denied that the will of Decedent was made pursuant to a contract.

■ Since "[a] contract to make a will in a certain manner or bequeath by will a specific monetary sum is recognized in Pennsylvania as valid ..." (*Fahringer v. Strine Estate*, 420 Pa. 48, 52, 216 A.2d 82, 85 (1966)) and since a contract such as this may be enforced as a third-party beneficiary contract (*Zimnisky v. Zimnisky*, 210 Pa.Super. 266, 231 A.2d 904 (1967)), appellee must prevail if the words contained in the 1958 will of Decedent constitute a contract to dispose of Decedent's bounty in a particular manner and if the parties to that agreement further contracted to give up the right to revocation. We note that the wording is apparently *sui generis*.

Our Supreme Court's most recent pronouncement concerning the irrevocability of mutual or reciprocal wills is contained in the *Estate of Joseph T. Imbruglia*, 479 Pa. 95, 387 A.2d 851 (1978). In that case, decedent and his first wife, Elvira, executed wills providing that the entire residue was to go to the surviving spouse, but in the event that spouse had predeceased the decedent, property located at a specific address in Philadelphia would be distributed to certain of Elvira's relatives, (appellants) and the residue would be equally divided among appellants and relatives of decedent. Elvira predeceased decedent, and decedent married his surviving spouse, Josephine. A new will was executed denying appellants a share of the residuary estate. The last will and a codicil thereto were admitted to probate, and the executors filed a first account. Thereafter, upon a stipulation of facts, the court dismissed the objection of the

aforementioned disappointed beneficiaries to the probate of the will. In *Imbruglia,* the Supreme Court noted that "mere execution of a will with provisions reciprocal to that of another does not [ ] with nothing more establish such a contract." *Id.* 479 Pa. at 98, 387 A.2d at 853. The Court in *Imbruglia* referred to *Kester Estate,* 477 Pa. 243, 383 A.2d 914 (1978) wherein it was stated

"In the absence of a valid contract, the mere concurrent execution of the will, with full knowledge of its contents by both testators, is not enough to establish a legal obligation to forebear revocation; . . . . It is not sufficient to prevent revocation that there are wills simultaneously made, and similar in their cross provisions *but the existence of a clear and definite contract must be shown,* either by proof of an express agreement, or by unequivocal circumstances. *Id.* 479 Pa. 98, 387 A.2d 853, *quoting Kester Estate,* 477 Pa. at 250, 383 A.2d at 918.

The Court further noted that "in *Kester,* we found that the language 'it is our wish and mutual understanding that we give and bequeath our entire estate' in a particular manner contained in the joint will of the decedent and her husband fell short of the 'demanding' standard of proof of a contract not to revoke the will." *Id.* 479 Pa. at 98, 387 A.2d 853, *Kester Estate,* 477 Pa. at 250, 383 A.2d at 918 (1978). The *Imbruglia* Court finally held

"While Joseph and Elvira Imbruglia devised each of their estates in a reciprocal manner and state [sic] a 'consideration' of the other's act of writing a similar will, *neither writing demonstrates that Joseph or Elvira agreed to give up their right to revoke the wills.* Further, no extrinsic evidence exists in the stipulated record proving an enforceable agreement between Joseph and Elvira. Appellants have, therefore, just as in . . . *Kester* fallen short of their burden of showing an agreement limiting decedent's right to revoke his [first] will." (Emphasis added) *Id.,* 479 Pa. at 100, 387 A.2d at 853

Likewise, in *Hoffert Estate,* 65 Pa.Super. 515 (1917), the joint will recited "Whereas, we have agreed to and with each other and do hereby will" certain property to a child of

the wife or (children of the child) if the property were not sold in the lifetime of the survivor." *Id.* 65 Pa.Super. at 519. Upon the wife's death, the husband bequeathed the property to others, and specific performance was sought to compel conveyance of the property according to the joint will. Our court, likewise, found no enforceable agreement limiting the husband's power to revoke the will.

In both recent pronouncements, *Kester* and *Imbruglia,* a clear and definite contract was not shown, either by proof of an express agreement or by unequivocal circumstances. *Kester Estate, supra.* The wording used in the wills could only be described as precatory or, at best, indicative of a mutual understanding.

"When it is claimed that someone has contractually limited his testamentary freedom, our standard of proof is a demanding one. In the case of a joint will in which extrinsic evidence is relied upon to prove the existence of a contract, we held that the proof must be 'clear and convincing'." *Id.* 477 Pa. at 251, 383 A.2d at 918.

Here the contract can be discerned from the face of the will. No extrinsic evidence is necessary. The parties agreed that the wills are to remain "unchanged". The will also contains a statement of the consideration for their agreement. "Valid consideration confers a benefit upon the promissor or causes a detriment to the promissee and must be an act, forbearance or return promise bargained for and given in exchange for the original promise." *Cardamone v. University of Pittsburgh,* 253 Pa.Super. 65, 72 n. 6, 384 A.2d 1228, 1232 n. 6 (1978). Each testament serves as the consideration for the other. The parties are constrained to forebear any change in the provisions of their wills in exchange for their receiving more than their intestate share.[2] *Herrs Estate,* 400 Pa. 90, 161 A.2d 32 (1960), *Swenks Estate,* 176

2. In reviewing the entry of summary judgment, we are limited to a review of the submitted pleadings and affidavits. Nowhere do appellants raise a material issue of fact as to failure of consideration which would arguably have occurred had Decedent's husband's estate left her with nothing more than that which she would have taken under

Pa.Super. 513, 108 A.2d 825 (1954). Usually the question of consideration arises where the testator forebears revocability in exchange for the recipient of his bounty rendering services to him during his lifetime. However, in *Swenks Estate*, the court found consideration where "[the testator] wanted to provide for Miss Swenk, but she was unwilling to do so without Miss Swenk naming the Ulmers as the benefactors of her will." 176 Pa.Super. at 519, 108 A.2d at 828.

Were it necessary to resort to parole or extrinsic evidence to prove the nature and terms of the contract, *aliunde* the will, it would be necessary for a jury to ascertain the meaning to be ascribed to the words in light of the surrounding circumstances and thereby to determine the terms or existence of the contract. *See Curtin v. Marson*, 185 Pa.Super. 194, 138 A.2d 149 (1958). Here, we have a will before us, the *bona fide* nature of which is not in dispute; its terminology is explicitly contractual, and since it expressly includes an intention to be bound and thereby remain "unchanged", it does not fall short of the "demanding standard" as did the wills in *Kester* and *Imbruglia*. We, therefore, hold that the court did not err in entering summary judgment in favor of appellee.

■ We hold, however, that the court erred in the amount awarded to appellee. In its order, the court stated in pertinent part

"It is the ORDER of this Court that Judgment be and is hereby entered in favor of the Plaintiff and against the Defendants in the amount of the gross value of the Estate of Betty T. Thompson less any amounts properly paid or payable for taxes, debts and reasonable funeral expenses...."

Under 20 Pa.C.S.A. § 3392,[3] "claims" against the estate are preceded in priority by administration expenses, family exemption, funeral expenses, the cost of a gravemarker, as

the intestate laws. There is, moreover, consideration in the parties' mutual obligation to forebear revocability.

3. 1972, June 30, P.L. 508, No. 164, § 2, eff. July 1, 1972.

well as rents for the occupancy of decedent's residence for six months immediately prior to death. Appellee stands in the position of any other creditor attempting to proceed against the assets of the estate. *In re: Estate of Nakoneczny*, 456 Pa. 320, 319 A.2d 893 (1974), *In re: Beeruk's Estate*, 429 Pa. 415, 241 A.2d 755 (1968).

Accordingly, consistent with our power to affirm, modify, vacate, set aside or reverse any order brought before us for review, without returning the record for amendment or modification to the court below, 42 Pa.C.S.A. § 706, we enter here an Order modifying the order of the lower court, *viz.:*

AND NOW, this 31st day of August, 1984, having considered the order granting Plaintiff's Motion for Summary Judgment, it is the ORDER of this Court that Judgment entered in favor of the Plaintiff and against the Defendants be and is hereby affirmed in the amount of the gross value of the Estate of Betty T. Thompson, Deceased, less any amounts payable for taxes, administration expenses, medical expenses under 20 Pa.C.S.A. § 3392(3), funeral expenses, debts, and the cost of a gravemarker. In all other respects, we affirm the order of the lower court.

Order affirmed as modified.