**Charles O. MILLER, Jr., and Dorothy M. Miller, Petitioners**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 8, 2009.

Decided April 8, 2010.

Lowell R. Gates and Sarah E. McCarroll, Lemoyne, for petitioners.

Jo Ann P. Collins, Sr. Deputy Attorney General, Harrisburg, for respondent.

BEFORE: SIMPSON, Judge, and LEAVITT, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Charles and Dorothy Miller petition for review of an adjudication of the Board of Finance and Revenue imposing a realty transfer tax on the Millers' conveyance of realty to a living trust. The Board held that the statutory exclusion for the transfer of real property to a living trust did not apply to the Millers' trust because it was an irrevocable living trust. Concluding that the Tax Reform Code of 1971 (Realty Transfer Tax Act)[1] does not require a living trust to be revocable in order to qualify for exclusion from tax, we reverse the Board of Finance and Revenue.

---

1. Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 8101–C–8114–C.

The stipulated facts are as follows. Charles and Dorothy Miller, husband and wife, created The Dorothy M. Miller Family Irrevocable Trust (Miller Trust) in October 2005. The Miller Trust Agreement names Dorothy Miller as settlor, and Charles and Dorothy Miller as co-trustees. The sole beneficiaries of the trust are Mr. and Mrs. Miller and their only child, Sharon M. Gregg. In pertinent part, Section 2.01 of the Trust Agreement states:

> **2.01. *Initial Principal.*** Settlor, desiring to establish an irrevocable trust, does hereby irrevocably transfer, assign and deliver to the Trustees and their successors and assigns the assets listed on Schedule "A", attached hereto and made a part hereof.

Respondent's Brief, Appendix A, Exhibit A, at 2. Section 10.01 of the Trust Agreement states:

> **10.01. *Irrevocability.*** Settlor has been advised of the consequences of an irrevocable trust and hereby declares that this Trust shall be irrevocable and shall not be altered, amended, revoked, or terminated by Settlor or any other person or persons.

*Id.* at 12.

By deed recorded November 30, 2005, Mr. and Mrs. Miller transferred title to their house and farm located in Carlisle to the Miller Trust.[2] The Millers did not pay realty transfer tax on the transfer, claiming that it was an excluded transaction under the Realty Transfer Tax Act because it was a transfer to the trustee of a "living trust."

On April 12, 2006, the Department of Revenue issued a Realty Transfer Tax Notice of Determination providing that the transfer of the Millers' realty, valued at $218,540, was subject to $4,370.80 in state and local realty transfer taxes, plus applicable interest and fees. The Department advised the Millers that their claimed exclusion was disallowed because the Miller Trust did not "qualify as an ordinary or living trust." Respondent's Brief, Appendix A, Exhibit D, at 2.

The Millers filed a petition for redetermination with the Department's Board of Appeals. On February 16, 2007, the Board of Appeals issued its decision, holding that the transaction was not excluded from realty transfer tax. The Board reasoned that because the Miller Trust is irrevocable, it is not a "will substitute" and, therefore, is not a living trust for purposes of the Realty Transfer Tax Act. On further appeal, the Board of Finance and Revenue affirmed the imposition of the realty transfer tax on the same grounds. The Millers now petition for this Court's review.

■ On appeal,[3] the Millers argue that the Board of Finance and Revenue erred in determining that the transfer of their farmstead to the Miller Trust was a taxable transaction. The Realty Transfer Tax Act provides an exclusion for the transfer of realty to the trustee of a "living trust," and the Millers argue that their transaction falls into that category. They note that a living trust addresses a future event, *i.e.*, what happens to property upon

---

**2.** More specifically, Charles O. Miller and Dorothy M. Miller, co-trustees of The Dorothy M. Miller Family Revocable Trust, transferred title to 7252 Wertzville Road, Carlisle, to Charles O. Miller and Dorothy M. Miller, co-trustees of The Dorothy M. Miller Family Irrevocable Trust. Respondent's Brief, Appendix A, Partial Stipulation of Facts, at 2.

**3.** This Court reviews *de novo* the determinations of the Board of Finance and Revenue. *Kelleher v. Commonwealth*, 704 A.2d 729, 731 (Pa.Cmwlth.1997). Stipulations of fact are binding upon both the parties and the Court. *Id.* However, this Court may draw its own legal conclusions. *Id.* (citing PA. R.A.P. 1571 (review of determinations of the Board)).

the death of the settlor, regardless of whether the trust is revocable or irrevocable. The Department counters that an irrevocable trust like the Miller Trust is not a substitute for a will and, therefore, does not constitute a "living trust" for purposes of the statutory exclusion.

 The issue presented in this case poses a question of statutory construction, for which our review is plenary. *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board*, 918 A.2d 171, 175 (Pa.Cmwlth.2007). The object of all statutory interpretation and construction is to ascertain and effectuate the intention of the General Assembly. 1 Pa. C.S. § 1921(a). In pursuing that end, we are mindful that the plain language of a statute generally provides the best indication of legislative intent. *Malt Beverages Distributors*, 918 A.2d at 175. Further, in reviewing the plain language of a statute, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a). Every statute must be construed to give effect to all its provisions so that no provision is "mere surplusage." *Malt Beverages Distributors*, 918 A.2d at 176 (citing 1 Pa.C.S. § 1921(a)). Likewise, this Court will not insert a word the legislature failed to supply into a statute. *Id.*

With the above principles in mind, we turn to the relevant statutory provisions in this case. Section 1102–C of the Realty Transfer Tax Act, 72 P.S. § 8102–C,[4] imposes a tax equal to one percent of the value of the property upon the transferor of real property in the Commonwealth. The statute contains the following exclusion for transfers of real estate to a living trust:

> The tax imposed by section 1102–C shall not be imposed upon:
>
> \* \* \*
>
> *A transfer for no or nominal actual consideration to a trustee of a living trust from the settlor of the living trust.* No such exemption shall be granted unless the recorder of deeds is presented with a copy of the living trust instrument.

Section 1102–C.3(8.1) of the Realty Transfer Tax Act, 72 P.S. § 8102–C.3(8.1) (emphasis added). A "living trust" is defined as follows:

> Any trust, other than a business trust, *intended as a will substitute by the settlor* which becomes effective during the lifetime of the settlor, *but from which trust distributions cannot be made to any beneficiaries other than the settlor prior to the death* of the settlor.

Section 1101–C of the Realty Transfer Tax Act, 72 P.S. § 8101–C (emphasis added).[5]

---

4. Section 1102–C states:

> Every person who makes, executes, delivers, accepts or presents for recording any document or in whose behalf any document is made, executed, delivered, accepted or presented for recording, shall be subject to pay for and in respect to the transaction or any part thereof, or for or in respect of the vellum parchment or paper upon which such document is written or printed, a State tax at the rate of one per cent of the value of the real estate represented by such document, which State tax shall be payable at the earlier of the time the document is

presented for recording or within thirty days of acceptance of such document or within thirty days of becoming an acquired company.

72 P.S. § 8102–C.

5. We note that the only issue in this case is whether the Miller Trust could be "intended as a will substitute." The Department does not dispute that the Miller Trust satisfies all of the other requirements for a living trust, *i.e.*, it is not a business trust, it is effective during Mrs. Miller's lifetime, and distributions are not permitted to anyone during Mrs. Miller's lifetime.

As noted by the Millers, the definition of "living trust" in Section 1101–C is clear and unambiguous; a living trust is any trust arrangement that the settlor intends to be a substitute for his or her will. Implicit in this definition is the notion that the settlor's subjective intent is determinative. Any other interpretation would render the language "intended ... by the settlor" mere surplusage. In this case, the Millers offered evidence that the settlor of the Miller Trust, Dorothy Miller, intended that the trust be a substitute for her will. Mrs. Miller testified via deposition that the purpose of the Miller Trust is "[t]o guarantee that our daughter would have the ... property when we passed away." Dorothy Miller Deposition, at 8. Mrs. Miller also responded affirmatively when counsel asked if she intended the Trust to be an alternative to her will. *Id.* at 13. Mrs. Miller's subjective intent could not be clearer.[6] Mr. Miller offered similar testimony.

■ In addition, the Miller Trust Agreement provides objective evidence that Mrs. Miller intended to create a "will substitute." The Restatement defines a "will substitute" as follows:

A will substitute is an arrangement respecting property or contract rights that is established during the donor's life, under which (1) the *right to possession or enjoyment of the property* or to a contractual payment *shifts outside of probate to the donee at the donor's death;* and (2) *substantial lifetime rights of* dominion, control, possession, or enjoyment *are retained by the donor.*

RESTATEMENT (THIRD) OF PROP.: WILLS AND OTHER DONATIVE TRANSFERS § 7.1(a) (2003) (emphasis added). We adopt the Restatement definition for purposes of reviewing the key provisions of the Miller Trust Agreement, which support the conclusion that it was intended as a will substitute.

Broadly speaking, the purpose of the Trust is to govern the Millers' property rights during the life of the settlor, Mrs. Miller, and to shift possession of any property held in trust to the Millers' daughter, Sharon Gregg, outside of probate. Much like a will, Section 4.03 of the Trust Agreement explains the distribution of trust assets depending upon a number of contingencies, including the death of either Mr. or Mrs. Miller before the other.[7]

Additionally, Mr. and Mrs. Miller, as co-trustees, retain substantial lifetime rights of dominion, control, possession and enjoyment of the property. These rights in-

---

6. The Department argues that relying upon a settlor's subjective intent that a trust be a will substitute results in an unworkable standard because every settlor of every trust will make this assertion in order to avoid taxation. The dissent echoes this view by suggesting that Mrs. Miller's testimony was "self-serving," but this describes the testimony of every witness who is a party to litigation. Whether the Department's concerns are valid is irrelevant because the statute says what it says, and we cannot disregard the legislature's express direction to consider the settlor's intent.

7. For example, Section 4.03(A) of the Trust Agreement provides that if Mr. Miller predeceases Mrs. Miller, the trust shall terminate and the remaining trust estate shall be distrib-

uted to Sharon Gregg, per stirpes. Respondent's Brief, Appendix A, Exhibit A, at 5. If Sharon Gregg has already predeceased her mother without leaving issue, the principal and accrued income of the trust will be distributed to other family members. Pursuant to Section 4.03(B) of the Trust Agreement, if Mr. Miller survives his wife, the trust shall terminate and the remaining trust estate shall be placed in a by-pass trust and held undivided by the trustees for the benefit of Mr. Miller during his lifetime. Section 4.03(B) also requires the trustees to distribute the income and principal of the trust as they deem necessary for the support and maintenance of Sharon Gregg, after first taking into consideration Mr. Miller's needs.

clude the ability to sell the real property. For example, Section 5.01(A)(1) of the Trust Agreement states:

(A) In the management, care and disposition of this Trust, the Trustees shall have the power to do all things and to execute such deeds, mortgages, instruments, and documents as may be deemed necessary and proper, including the following powers, *all of which may be exercised without order of or report to any court:*

(1) To sell, exchange, or otherwise dispose of any property, real, personal or mixed, at any time held or acquired hereunder, at public or private sale, for cash or on terms, without advertisement, including the right to lease for any term notwithstanding the period of the Trust, and to grant options, including an option for a period beyond the duration of the Trust; and to execute such deeds or other instruments as are necessary.

Respondent's Brief, Appendix A, Exhibit A, at 7 (emphasis added).[8]

In sum, the Miller Trust Agreement satisfies the Restatement's definition of a will substitute. It shifts real property to another at the donor's death outside probate, and it gives the donor substantial lifetime rights of dominion and control.

The Department argues that a revocable trust is like a will because both instruments are ambulatory and transfer only a right to a future possessory interest. It is because a will effects no current transfer of ownership that it is not taxable. Transfer of property to an irrevocable trust, on the other hand, is an immediate and final transfer of ownership. Therefore, the Department argues, it should be subject to realty transfer tax like any other sale or gift of real estate.

The problem with the Department's argument is that it fails to recognize the true nature of the Miller Trust. Here, the settlor, trustees and beneficiaries are a single family unit. Mr. and Mrs. Miller will continue to live in their residence and enjoy dominion, control, possession and enjoyment of the property for their lifetimes. As a practical matter, there is no present transfer of use or enjoyment of the property to Sharon Gregg until the death of the settlor. In addition, distributions from the trust can only be made to the settlor prior to the settlor's death. Section 1101–C of the Realty Transfer Tax Act, 72 P.S. § 8101–C.

The Department, and the dissent, direct this Court to foreign authority for the proposition that a trust must be revocable in order to function as a will substitute. This foreign authority includes Restatements of the law; decisions from other state courts; American Bar Association publications; and law review articles. We need not look outside Pennsylvania for guidance on this issue, however, because the statutory language before us is clear and unambiguous. There is no requirement in Section 1101–C of the Realty Transfer Tax Act that a living trust must be revocable by the settlor in order to be treated as a will substitute for tax purposes. Whether such a requirement should be added to the Act is for the legislature to decide.[9]

---

**8.** The dissent asserts that the Miller Trust was not intended as a will substitute. However, the dissent does not reconcile that conclusion with the language in Section 5.01(A)(1), which gives the Millers lifetime possession and enjoyment of the property, and the testa-mentary language in Section 4.03 of the Miller Trust.

**9.** The Department also urges this Court to defer to its view that an irrevocable trust can never be a living trust for tax purposes. It is well established that an administrative agen-

In short, the Trust Agreement functions like a will by distributing the Millers' farmstead and any other assets in the trust to Sharon Gregg upon the death of her parents. Until that time, Mr. and Mrs. Miller will continue to live in their home and retain control and possession of the property, including the ability to sell or lease the home. Whether the Miller Trust is revocable or irrevocable matters not in assessing its function.

For all of the foregoing reasons, we reverse the order of the Board of Finance and Revenue.

## *ORDER*

AND NOW, this 8th day of April, 2010, the order of the Board of Finance and Revenue in the above-captioned matter, dated October 16, 2007, is REVERSED.

Unless exceptions are filed within 30 days pursuant to Pa. R.A.P. 1571(i), this order shall become final.

## DISSENTING OPINION BY Judge SIMPSON.

I respectfully dissent. I would find as a fact that the Miller Trust was not intended as a will substitute. Unlike a will, which does not immediately transfer ownership and can be changed or revoked before death, transfer of property to the Trust is immediately effective and cannot be changed. As a result, I would affirm the assessment of transfer taxes on the irrevocable conveyance from the settlor to the Trust.

The majority analyzes this case through statutory construction. In contrast, I view this as a matter of fact finding. Although we sit in our appellate jurisdiction, we function as a trial court. We make findings of fact and conclusions of law based on stipulations of the parties and the record as a whole. Here, the parties did not stipulate as to whether the Trust was intended as a will substitute; therefore, we must make that finding of fact.

The majority concludes that the subjective intent of the settlor controls. However, as fact finder I would also consider the instrument and how it functions. On transfer to the Trust, legal title to the property here leaves the settlor and never returns. Also, the settlor can never change her plans as to disposition of the property. In these significant ways the Trust is not like a will. Further, I would give greater weight to the objective evidence of the instrument and its operation, and I would give less weight to the self-serving testimony of subjective intent.

There are additional reasons supporting my approach to fact-finding. First and foremost, my proposed finding is consistent with legal authority that an irrevocable trust, like the Trust here, is not a will

cy's interpretation of a statute for which it has enforcement responsibility is entitled to substantial deference. *Borough of Pottstown v. Pennsylvania Municipal Retirement Board,* 551 Pa. 605, 611, 712 A.2d 741, 744 (1998). However, where the meaning of a statute is a question of law for the court, such deference is unwarranted if the agency's interpretation is unwise or erroneous. *Rosen v. Bureau of Professional and Occupational Affairs, State Architects Licensure Board,* 763 A.2d 962, 968 (Pa.Cmwlth.2000). Such is the case here, where the legislature has not required that a trust must be revocable to be a living trust.

Further, "the rules of [statutory] construction are clear that exclusions in tax statutes are to be strictly construed against the taxing body and in favor of the taxpayer to the extent that there is any reasonable doubt regarding the meaning of the statutory language." *BFC Hardwoods, Inc. v. Board of Assessment Appeals of Crawford County,* 565 Pa. 65, 72 n. 5, 771 A.2d 759, 763 n. 5 (2001) (quoting *City of Philadelphia v. Tax Review Board ex rel. Ace Dump Truck Service,* 158 Pa.Cmwlth. 402, 631 A.2d 1072, 1074 (1993)). Applying this axiom in the case *sub judice* requires that we find in favor of the Millers.

substitute. *See, e.g.,* RESTATEMENT (THIRD) OF TRUSTS § 11 cmt. b (2003) (*revocable* trust is will substitute), § 25 cmt. a (*revocable* trust widely used as legally accepted substitute for will); RESTATEMENT (THIRD) OF PROP.: WILLS AND OTHER DONATIVE TRANSFERS § 7.1 cmt. a (2003) (*irrevocable* trusts do *not* serve the function of a will).

Second, my proposed finding is more practical. In this regard, I entirely agree with the Commonwealth that relying solely on self-serving declarations of subjective intent is unworkable. In sum, based on my proposed finding that the Trust was not intended as a will substitute, I would affirm the assessment of transfer taxes.