**Charles O. MILLER, Jr., and Dorothy M. Miller, Petitioners**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 16, 2010.

Decided March 29, 2011.

5. This opinion does not preclude the Church from applying for such exemption from real estate taxation in future years.

Lowell R. Gates, Lemoyne, for petitioners.

Jo Ann P. Collins, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and McGINLEY, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and LEAVITT, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.

OPINION BY Judge LEAVITT.

The Commonwealth of Pennsylvania has filed exceptions to an opinion and order of a three-judge panel of this Court dated April 8, 2010, which reversed the Board of Finance and Revenue's imposition of the state's one-percent realty transfer tax on the conveyance of real property to an irrevocable living trust. *Miller v. Commonwealth*, 992 A.2d 950 (Pa.Cmwlth.2010). In doing so, the panel concluded that to be excluded from the realty transfer tax, a living trust need not be a revocable trust so long as it functions as a will substitute. After review, we confirm the result reached by the panel.

Charles and Dorothy Miller, husband and wife, created The Dorothy M. Miller Family Irrevocable Trust (Miller Trust) in October 2005. The Miller Trust Agreement names Dorothy Miller as settlor, and Charles and Dorothy Miller as co-trustees. The beneficiaries of the trust are Mr. and Mrs. Miller and their only child, Sharon M. Gregg. In pertinent part, Section 2.01 of the Trust Agreement states:

> **2.01.** *Initial Principal.* Settlor, desiring to establish an irrevocable trust, does hereby irrevocably transfer, assign and deliver to the Trustees and their successors and assigns the assets listed on Schedule "A", attached hereto and made a part hereof.

Respondent's Brief, Appendix A, Exhibit A, at 2. Section 10.01 of the Trust Agreement states:

> **10.01.** *Irrevocability.* Settlor has been advised of the consequences of an irrevocable trust and hereby declares that this Trust shall be irrevocable and shall not be altered, amended, revoked, or terminated by Settlor or any other person or persons.

*Id.* at 12.

By deed recorded November 30, 2005, Mr. and Mrs. Miller transferred title to their house and farm located in Carlisle to the Miller Trust.[1] The Millers did not pay the standard one-percent realty transfer tax on the transaction, claiming that it was not subject to the Tax Reform Code of 1971 (Realty Transfer Tax Act)[2] because it was a transfer to a "living trust."

On April 12, 2006, the Department of Revenue issued a Realty Transfer Tax Notice of Determination providing that the transfer of the Millers' realty, valued at $218,540, was subject to $4,370.80 in state and local realty transfer taxes, plus applicable interest and fees. The Department advised the Millers that their claimed tax exemption was disallowed because the Miller Trust did not "qualify as an ordinary or living trust." Respondent's Brief, Appendix A, Exhibit D, at 2.

The Millers filed a petition for redetermination with the Department's Board of Appeals. On February 16, 2007, the Board of Appeals issued its decision, holding that the transaction was subject to the realty transfer tax. The Board reasoned that because the Miller Trust is irrevocable, it is not a "will substitute" and, there-

---

1. More specifically, Charles O. Miller and Dorothy M. Miller, co-trustees of The Dorothy M. Miller Family Revocable Trust, transferred title to 7252 Wertzville Road, Carlisle, to Charles O. Miller and Dorothy M. Miller, co-trustees of The Dorothy M. Miller Family Irre-

vocable Trust. Respondent's Brief, Appendix A, Partial Stipulation of Facts, at 2.

2. Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. §§ 8101–C—8114–C.

fore, is not a living trust for which the legislature created an exclusion in the Realty Transfer Tax Act. On further appeal, the Board of Finance and Revenue affirmed the imposition of the realty transfer tax on the same grounds. The Millers petitioned for this Court's review.

On review, the three-judge panel reversed the Board of Finance and Revenue's decision, and held that the Millers' conveyance of their property to the Miller Trust was excluded from the one-percent realty transfer tax.[3] In so holding, the panel examined the following provision concerning transfers of real estate to a living trust in Section 1102–C.3(8.1) of the Realty Transfer Tax Act:

> The tax imposed by section 1102–C shall not be imposed upon:
>
> \*      \*      \*
>
> *A transfer for no or nominal actual consideration to a trustee of a living trust from the settlor of the living trust.* No such exemption shall be granted unless the recorder of deeds is presented with a copy of the living trust instrument.

Section 1102–C.3(8.1) of the Realty Transfer Tax Act, 72 P.S. § 8102–C.3(8.1) (emphasis added). The panel also considered the definition of "living trust" in the Act:

> Any trust, other than a business trust, *intended as a will substitute by the settlor* which becomes effective during the

lifetime of the settlor, *but from which trust distributions cannot be made to any beneficiaries other than the settlor prior to the death* of the settlor.

Section 1101–C of the Realty Transfer Tax Act, 72 P.S. § 8101–C (emphasis added).[4]

Dorothy Miller, the settlor, testified that she intended the Miller Trust to be a substitute for her will. The panel found the plain language "intended ... by the settlor" to mean that subjective intent alone can be determinative. However, the panel further reasoned that the Miller Trust Agreement itself provided objective evidence to support Mrs. Miller's stated intention to create a "will substitute." In fact, the panel decision was focused upon a review of this objective evidence, *i.e.,* the language and meaning of the trust instrument. The panel adopted the definition of "will substitute" in the Restatement (Third) of Property, which states that if a trust shifts real property to another at the donor's death outside of probate, while preserving substantial lifetime rights of dominion and control in the donor, it is a will substitute. Because the Miller Trust satisfied the Restatement's definition of a will substitute, the panel held that the transfer was not subject to the realty transfer tax.

The Commonwealth has filed several exceptions to this Court's opinion and order.[5] The Commonwealth argues,

---

**3.** One member of the panel dissented.

**4.** We note that the only issue in this case is whether the Miller Trust could be "intended as a will substitute." The Commonwealth does not dispute that the Miller Trust satisfies all of the other requirements for a living trust, *i.e.,* it is not a business trust, it is effective during Mrs. Miller's lifetime, and it does not permit distributions to anyone other than Mrs. Miller during her lifetime.

**5.** In tax appeals from the Board of Finance and Revenue, this Court functions as a trial

court, and exceptions filed to its final order have the effect of an order granting reconsideration. *Consolidated Rail Corp. v. Commonwealth,* 679 A.2d 303, 304 (Pa.Cmwlth.1996) (citing PA. R.A.P. 1571(i)) ("Any party may file exceptions to an initial determination by the court under this rule within 30 days after the entry of the order to which exception is taken."). This Court reviews *de novo* the determinations of the Board. *Kelleher v. Commonwealth,* 704 A.2d 729, 731 (Pa.Cmwlth. 1997). Stipulations of fact are binding upon both the parties and the Court. *Id.* Howev-

*inter alia*, that the Court erred in describing Section 1102–C.3(8.1) of the Realty Transfer Tax Act as an exclusion from taxation when it is more properly described as an exemption from taxation. The Commonwealth also contends that the Court erred in holding that the Miller Trust is a "will substitute" because it is not a revocable trust, which is required in order for a trust to claim the benefit of Section 1102–C.3(8.1). Finally, the Commonwealth asserts that the Court erred by holding that the subjective intent of the settlor is relevant to whether a trust is a will substitute.

■ We first address the Commonwealth's exception that the panel erred by stating that Section 1102–C.3(8.1) of the Realty Transfer Tax Act creates an "exclusion" from tax rather than an exemption. We disagree. It is a well settled principle of statutory interpretation that "[t]he headings prefixed to titles, parts, articles, chapters, sections and other divisions of a statute shall not be considered to control but may be used to aid in the construction thereof." 1 Pa.C.S. § 1924. Here, the legislature designated the transactions listed in Section 1102–C.3 as "Excluded transactions," and we presume that it understood the distinction between an exclusion and an exemption from tax. Section 1102–C.3(8.1) identifies a category of transac-

tions that should not be taxed in the first place, *i.e.*, transfers to a living trust intended as a will substitute.[6] We overrule the Commonwealth's exception and hold that Section 1102–C.3(8.1) provides an exclusion from realty transfer tax.[7]

■ We turn next to the Commonwealth's primary exception, namely that the panel erred in its application of the exclusion in Section 1102–C.3(8.1) to the Miller Trust. Specifically, the Commonwealth challenges the panel's holding that the trust instrument in question was intended as a "will substitute" and, as such, a living trust for purposes of the tax exclusion. In addressing the Commonwealth's exception, we confirm the panel's adoption of the Restatement definition of a "will substitute":

> A will substitute is an arrangement respecting property or contract rights that is established during the donor's life, under which (1) the right to possession or enjoyment of the property or to a contractual payment shifts outside of probate to the donee at the donor's death; and (2) substantial lifetime rights of dominion, control, possession, or enjoyment are retained by the donor.

RESTATEMENT (THIRD) OF PROPERTY: WILLS AND OTHER DONATIVE TRANSFERS § 7.1(a) (2003).

er, this Court may draw its own legal conclusions. *Id.* (citing PA. R.A.P. 1571). The issue presented in this case poses a question of statutory construction, for which our review is plenary. *Malt Beverages Distributors Association v. Pennsylvania Liquor Control Board*, 918 A.2d 171, 175 (Pa.Cmwlth.2007), *affirmed*, 601 Pa. 449, 974 A.2d 1144 (2009).

6. Thus, our interpretation is in accord with our Supreme Court's jurisprudence explaining that " '[e]xemptions' are given for the tax paid on items that, though ordinarily subject to taxation, are excused from taxation because certain criteria have been met.... 'Exclusions' are given for tax paid on items not

intended to be taxed in the first place." *Crawford Central School District v. Commonwealth*, 585 Pa. 131, 138, 888 A.2d 616, 620 (2005) (citations omitted) (emphasis added).

7. In any event, whether Section 1102–C.3(8.1) is characterized as an exclusion or an exemption is not outcome determinative. The dispositive issue in this case is, simply, whether the Miller Trust was intended to be a will substitute. As this is a legal question, our standard of review is *de novo* and scope of review is plenary. *In re Milton Hershey School*, 590 Pa. 35, 42, 911 A.2d 1258, 1261 (2006).

As explained in the panel's opinion, the purpose of the Trust is to give the Millers full rights over their property during the life of the settlor, Mrs. Miller, and to shift property remaining in the Trust at Mrs. Miller's death to the Millers' daughter, Sharon Gregg, outside of probate. Similar to a will,[8] Section 4.03 of the Trust Agreement explains that the distribution of trust assets depends upon a number of contingencies, including the death of either Mr. or Mrs. Miller before the other.[9]

Additionally, Mr. and Mrs. Miller, as co-trustees, retain substantial lifetime rights of dominion, control, possession and enjoyment of the property. These rights include the ability to sell the real property. For example, Section 5.01(A)(1) of the Trust Agreement states:

> (A) In the management, care and disposition of this Trust, the Trustees shall have the power to do all things and to execute such deeds, mortgages, instruments, and documents as may be deemed necessary and proper, including the following powers, all of which may be exercised without order of or report to any court:

> (1) To sell, exchange, or otherwise dispose of any property, real, personal or mixed, at any time held or acquired hereunder, at public or private sale, for cash or on terms, without advertisement, including the right to lease for any term notwithstanding the period of the Trust, and to grant options, including an option for a period beyond the duration of the Trust; and to execute such deeds or other instruments as are necessary.

Respondent's Brief, Appendix A, Exhibit A, at 7 (emphasis added).[10]

■ The Commonwealth argues that only a revocable trust can be a will substitute. A revocable trust transfers an expectation to a future possessory interest.[11] An irrevocable trust, on the other hand, transfers immediate and final transfer of ownership. Therefore, the Commonwealth argues, a transfer of realty to an irrevocable trust should be subject to the realty transfer tax like any other sale or gift of real estate.

■ A transfer of real property to a living trust is an immediate transfer of

8. Notably, counsel for the Millers conceded at oral argument that the distribution of trust assets upon the death of either Mr. or Mrs. Miller will be subject to estate and inheritance taxes.

9. For example, Section 4.03(A) of the Trust Agreement provides that if Mr. Miller predeceases Mrs. Miller, the trust shall terminate and the remaining trust estate shall be distributed to Sharon Gregg, per stirpes. Respondent's Brief, Appendix A, Exhibit A, at 5. If Sharon Gregg has already predeceased her mother without leaving issue, the principal and accrued income of the trust will be distributed to other family members. Pursuant to Section 4.03(B) of the Trust Agreement, if Mr. Miller survives his wife, the trust shall terminate and the remaining trust estate shall be placed in a by-pass trust and held undivided by the trustees for the benefit of Mr. Miller during his lifetime. Section 4.03(B) also re-

quires the trustees to distribute the income and principal of the trust as they deem necessary for the support and maintenance of Sharon Gregg, after first taking into consideration Mr. Miller's needs.

10. The Commonwealth suggests that the Millers' retention of substantial lifetime rights to control, possess and enjoy the property may defeat their objective to shield this asset from future creditors. This is an issue for another day. Our task in this appeal is to interpret and apply the exclusion in Section 1102–C.3(8.1) of the Realty Transfer Tax Act, which by its terms applies to any trust intended as a will substitute.

11. That is the case with the Miller Trust. The only truly irrevocable aspect of the trust is its choice of beneficiaries. The trust assets may be depleted during the lifetimes of Mr. and Mrs. Miller.

property to another legal person, *i.e.*, the trust. This is true regardless of whether the trust is revocable or irrevocable. The real question is whether the trust receiving the real property is intended as a will substitute. The dissent emphasizes that a will or will substitute must be "ambulatory," which is defined as "[c]apable of being altered or revised." BLACK's LAW DICTIONARY at 80 (7th ed.1999). Seizing on this concept, the dissent argues that the settlor of a trust must be able to change the beneficiaries of a trust during her lifetime in order for the trust to be ambulatory and, therefore, a "living trust" as identified in the tax statute. This analysis transforms the typical characteristics of a living trust, or will substitute, into formal legal requirements, with no citation to Pennsylvania law. Indeed, Pennsylvania law suggests a different result. It has long been settled in Pennsylvania that one may enter into a valid contract to create an irrevocable will disposing of his property in a particular way and that such a contract will be specifically enforceable. *In re McGinley's Estate*, 257 Pa. 478, 483, 101 A. 807, 808 (1917); *In re Estate of Swenk*, 176 Pa.Super. 513, 108 A.2d 825, 827 (1954). If a contract to create an irrevocable will violated Pennsylvania probate law, it would not be an enforceable contract.

More to the point, the legislature did not limit the tax exclusion to revocable living trusts. It is a well settled canon of statutory construction that a court has no power to insert a word into a statute if the legislature has failed to supply it. *Soberick v. Salisbury Township Civil Service Commission*, 874 A.2d 155, 158 (Pa. Cmwlth.2005). Stated another way, we must "listen attentively to what a statute says; one must also listen attentively to what it does not say." *Id.* at 157–58. Together, Sections 1102–C.3(8.1) and

1101–C of the Realty Transfer Tax Act exclude from tax a transfer of property to a "living trust," which is defined as "[a]ny trust, other than a business trust. . . ." 72 P.S. §§ 8102–C.3(8.1), 8101–C. The legislature did not say that a living trust is "any revocable trust," nor did it include the word "irrevocable" in the "other than" clause. In short, the Act contains no requirement that a living trust be revocable in order to qualify for the exclusion.

The Miller Trust functions as a will substitute. The settlor, trustees and beneficiaries are all members of the same family. Mr. and Mrs. Miller will continue to live in their residence and enjoy dominion, control, possession and enjoyment of the property for their lifetimes as they would have if they had retained title to the property in their own name. Such dominion includes the right to sell the farmstead to a developer, which is a transaction that would trigger the realty transfer tax. As a practical matter, there is no present transfer of the Millers' use and enjoyment of the property to Sharon Gregg; she gets nothing until the death of the settlor. In addition, distributions from the trust can be made only to the settlor during the settlor's lifetime. *See* Section 1101–C of the Realty Transfer Tax Act, 72 P.S. § 8101–C (defining a "living trust" as one "from which trust distributions cannot be made to any beneficiaries other than the settlor prior to the death of the settlor.").

The Miller Trust Agreement satisfies the Restatement's definition of a will substitute. It shifts real property to another at the donor's death outside probate, and it gives the donor substantial lifetime rights of dominion and control. The exclusion in Section 1102–C.3(8.1) of the Realty Transfer Tax Act applies to any living trust that is intended as a will substitute, which is

the case with the Miller Trust.[12] Accordingly, we overrule the Commonwealth's exception to the panel's determination that the Miller Trust was intended as a will substitute.

■ Finally, we consider the Commonwealth's exception to the panel statement that the subjective intent of the settlor is relevant to whether a trust is a will substitute and, therefore, a living trust for purposes of Section 1102–C.3(8.1). We agree with the Commonwealth that relying upon the settlor's subjective intent is not appropriate except in the rare case where, because of an ambiguity, parol evidence may be used. There is no ambiguity in the Miller Trust. Mrs. Miller's testimony was unnecessary because the intent of the trust may be gleaned from the language used therein. Therefore, we sustain the Commonwealth's exception on this issue. Testimony from the settlor on her intent in establishing a living trust is not relevant evidence in a case where the trust instrument is unambiguous.

To summarize, we hold that Section 1102–C.3(8.1) of the Realty Transfer Tax Act, 72 P.S. § 8102–C.3(8.1), establishes an exclusion from tax. We agree with the Commonwealth that the subjective intent of the settlor does not determine whether a trust is a will substitute; rather, an objective review of the terms of the trust instrument is the appropriate way to make that determination. The Commonwealth's remaining, and principal, exception to the panel's holding is overruled for the reasons set forth in this opinion and in the original panel opinion.

We hold that the Miller Trust satisfies the exclusion from taxation established in Section 1102–C.3(8.1) because the trust instrument functions as a will substitute. The legislature did not command that the living trust be revocable, only that it function as a will substitute.

## ORDER

AND NOW, this 29th day of March, 2011, after considering the exceptions filed in the above-captioned matter by the Commonwealth of Pennsylvania from an opinion and order filed on April 8, 2010, by a

---

12. The Commonwealth, and the dissent, rely heavily on the first paragraph of comment as to Section 7.1 of the Restatement. The purpose of this comment is to explore the question of whether irrevocable trusts, gifts and will substitutes have to be executed in accordance with the statutory requirements for a will. The comment states:

> Because outright gifts and irrevocable trusts do not serve the function of a will, they are not wills and need not be executed in compliance with the statutory formalities required for wills. A will substitute, however, does serve the function of a will. This section makes clear that a will substitute need not be executed in compliance with the statutory formalities required for a will.

RESTATEMENT (THIRD) OF PROPERTY: WILLS AND OTHER DONATIVE TRANSFERS § 7.1, comment a (2003). From this comment on how certain legal documents need to be executed, the dissent reasons that an irrevocable trust does not serve the function of a will.

Comment a relates to document execution and witnessing. It does not address the essential characteristics of a will substitute. It is the text of Restatement Section 7.1(a) that addresses the essentials of a will substitute. They are: the will substitute must transfer a nonpossessory future interest while preserving the right in the trustees to dispose of trust assets before possession transfer. This two-part test is easy to apply and, as a practical matter, will aid recorders of deeds in inspecting trust instruments and determining whether a trust is or is not a will substitute. If that determination proves difficult to apply in practice, then the recorder of deeds can simply levy the realty transfer tax, and the settlor may appeal the tax. There is no escaping the need to examine the contents of every living trust, whether labeled "revocable" or "irrevocable." It is the function of the trust, not its label, that determines whether it establishes a will substitute.

panel of Judges of this Court, and reported at 992 A.2d 950 (Pa.Cmwlth.2010), said exceptions are SUSTAINED in part and OVERRULED in part in accordance with the attached opinion. Judgment is entered in favor of Petitioners, Charles O. Miller, Jr. and Dorothy M. Miller.

## DISSENTING OPINION BY Judge COHN JUBELIRER.

I respectfully dissent. The Realty Transfer Tax Act[1] (Act) provides an exclusion from realty transfer tax for "[a] transfer for no or nominal consideration to a trustee of a *living trust* from the settlor of the living trust." Section 1102–C.3(8.1) of the Act, 72 P.S. § 8102–C.3(8.1) (emphasis added).[2] For this reason, the definition of a "living trust" becomes paramount to determining if a transfer is excluded from the realty transfer tax. Section 1101–C of the Act, in relevant part, defines a "living trust" as "[a]ny trust, other than a business trust, intended *as a will substitute by the settlor.*" 72 P.S. § 8101–C (emphasis added). In order for an instrument to qualify as a will substitute, it must first serve the essential function of a will or share the essential qualities of a will. Black's Law Dictionary defines a "will" as an "instrument by which a person makes a disposition of his real and personal property, to take effect after his death, and *which by its own nature is ambulatory and revocable during his lifetime.*" Black's Law Dictionary 1598 (6th ed.1990) (emphasis added). The essential, revocable nature of a will is also set forth in the Restatement (Third) of Property: Wills and Other Donative Transfers, which provides:

> *a.* scope and rationale. Because outright gifts and *irrevocable trusts do not serve the function of a will, they are not*

*wills* and need not be executed in compliance with the statutory formalities required for wills. A will substitute, however, does serve the function of a will.

Restatement (Third) of Property: Wills and Other Donative Transfers § 7. 1, Comment *a* (emphasis added). It is noteworthy that this Comment highlights the fact that irrevocable trusts do not serve the function of a will. This is in direct contrast to will substitutes, which, by definition, serve the function of a will. The Restatement's definition of a "will substitute" cannot be read separately and apart from Comment *a*, which explains the drafters' intent. Comment *a* instructively lists those instruments that serve as will substitutes and includes *revocable* inter vivos trusts, life insurance, pension accounts, transfer-on-death arrangements with banks, joint ownership with right of survivorship and annuities with death benefits. Irrevocable trusts are not included among the will substitutes in this list because, as the first paragraph of Comment *a* explains, *irrevocable* trusts do *not* serve the function of a will. I believe the majority opinion errs when it interprets the Restatement's definition of "will substitute" in direct contradiction to the drafters' intent as explained in Comment *a*.

A will substitute, such as a revocable trust or a beneficiary designation for life insurance or pension accounts, permits one's property disposition to be changed at any time during his or her lifetime. This ability to change beneficiaries without limitation is critical to the ambulatory essence of a will or a will substitute. Because they are ambulatory or "living," will substitutes are often referred to as "living trusts." However, the Miller Trust specifically for-

---

**1.** Act of March 4, 1971, P.L. 6, *as amended,* 72 P.S. §§ 8101–C–8114–C.

**2.** Section 1102–C.3 was added by Section 11 of the Act of July 2, 1986, P.L. 318, *as amended.*

bids this type of unrestricted ambulatory change in beneficiaries from taking effect during the joint lifetimes of the Millers. For instance, Section 4.03(C) forbids, *inter alia,* the Settlor's spouse from appointing trust assets in favor of himself, his estate, his creditors or the creditors of his estate, and to anyone other than the Settlor's issue and spouses of Settlor's issue. In addition, although Section 4.04 provides a broad special power of appointment to the Trustees exercisable by their wills, it does not permit them to appoint the principal of the trust to themselves, their estates, their creditors, or the creditors of their estates. Most significantly, Section 4.02 prohibits the Trustees from making distributions of income to or for the benefit of the Settlor in the event the Settlor is residing in a long-term care facility for longer than thirty days. Section 4.02 also prohibits the distribution of trust principal to or for the benefit of the Settlor. The Settlor, being one of the Trustees, must abide by these limitations and cannot amend or alter them because they are irrevocable during her lifetime or until a will of either herself or her spouse may become effective. This irrevocability of certain trust provisions during the joint lifetimes of the Millers distinguishes the Miller Trust from a revocable trust wherein the settlor can change any of the beneficiary designations to anyone, to take effect either during or after one's lifetime, without restriction.

In addition, and contrary to Miller Trust Sections 4.03 and 4.04, Section 7745(1) of the Uniform Trust Act provides that the property of a revocable trust is subject to the claims of the settlor's creditors while the settlor is living. 20 Pa.C.S. § 7745(1). In contrast, the limitations found in Sections 4.03 and 4.04 of the Miller Trust, for example, prevent its assets from being subject to any potential claims of creditors. These irrevocable limitations prevent the Miller Trust from being a will substitute or an ambulatory instrument in its essential nature. Although we recognize that there are some features of this irrevocable trust that provide for alternative testamentary dispositions through powers of appointment exercisable by will, I have highlighted several critical features that are not ambulatory or "living." These features are not in the nature of a will, but have other functions and purposes requiring irrevocability during certain times. Therefore, this irrevocable trust serves certain functions unlike a will and, therefore, it cannot be a will substitute. It is axiomatic that one cannot intend something to be what it intrinsically can never be.

For these reasons, I must respectfully dissent from the majority opinion, which would include an irrevocable trust within the definition of a "will substitute."