84 A.3d 620

Charles O. MILLER, Jr., and Dorothy M. Miller, Appellees

v.

COMMONWEALTH of Pennsylvania, Appellant.

Supreme Court of Pennsylvania.

Argued May 9, 2012.

Decided Dec. 17, 2013.

84

John G. Knorr III, JoAnn Petroziello Collins, Kathleen Granahan Kane, Office of Atty. Gen., Harrisburg, for Appellant.

Lowell Rector Gates, Sarah Elaine McCarroll, Gates, Halbruner & Hatch, P.C., Lemoyne, for Appellees.

Wendi Lynn Kotzen, Christopher Andrew Jones, Ballard Spahr LLP, Philadelphia, Rudolph Garcia, Buchanan Ingersolll & Rooney, PC, Philadelphia, George F. Nagle, Sorin Royer Cooper LLC, Conshohocken, for Philadelphia Bar Ass'n, Amicus Curiae.

CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice EAKIN.

Appellees, husband and wife, created The Dorothy M. Miller Family Irrevocable Trust in October, 2005. The trust names Mrs. Miller as settlor, and her and her husband as co-trustees. The sole beneficiaries of the trust are appellees and their only child. Pursuant to § 2.01 of the trust, Mrs. Miller irrevocably "transfer[red], assign[ed] and deliver[ed] to the Trustees and their successors and assigns the assets listed on Schedule 'A'[.]" Miller Trust, at 2. By deed recorded November 30, 2005, appellees transferred title to their house and farm to the trust.[1] Appellees did not pay realty transfer tax on the

---

1. Mrs. Miller is named the settlor, but the grantors of the land were both appellees, denominated as "Co–Trustees of the DOROTHY M. MILLER FAMILY REVOCABLE TRUST[.]" Special Warranty Deed, 11/21/2005, at 1. The relevant 50 acres (give or take) were placed in this revocable trust by deed from both appellees in 1994. *Id.*, at 2.

transfer, claiming it was an excluded transaction under the Realty Transfer Tax Act, 72 P.S. § 8101–C *et seq.,* as a transfer to a "living trust." *See id.,* § 8102–0.3(8.1). A living trust is "[a]ny trust, other than a business trust, intended as a will substitute by the settlor which becomes effective during the lifetime of the settlor, but from which trust distributions cannot be made to any beneficiaries other than the settlor prior to the death of the settlor." *Id.,* § 8101–C.

On April 12, 2006, the Department of Revenue issued a Realty Transfer Tax Notice of Determination providing the transfer was subject to $4,370.80 in realty transfer taxes, plus applicable interest and fees. The Department advised appellees their claimed exclusion was disallowed because the Miller Trust "[d]oes not qualify as an ordinary or living trust." Pennsylvania Realty Transfer Tax Notice of Determination, 4/12/06, at 2. Appellees filed a petition for redetermination with the Department's Board of Appeals. The Board held the transaction was subject to the realty transfer tax, reasoning an irrevocable trust cannot be a living trust because "the settlor of a living trust must be free to change or revoke all or part of the trust during his lifetime." Department of Revenue Board of Appeals Decision and Order, 2/16/07, at 2. On further appeal, the Board of Finance and Revenue affirmed the imposition of the tax on the same grounds. *See* Board of Finance and Revenue Order No. 0613343, 10/16/07, at 4.

A three-judge panel of the Commonwealth Court reversed the Board's decision, and held appellees' conveyance of their property to the Miller Trust was excluded from realty transfer tax. The panel relied on Mrs. Miller's testimony she intended the Miller Trust to be a substitute for her will, which it found sufficient to meet the " 'intended as a will substitute by the settlor' " language defining a living trust. *Miller v. Commonwealth,* 992 A.2d 950, 952–53 (Pa.Cmwlth.2010) (quoting 72 P.S. § 8101–C).[2] The panel found the settlor's subjective

**2.** Judge Simpson dissented, stating he would find the Miller Trust was not intended as a will substitute because, unlike a property transfer by will, transfer of property to a trust is immediately effective and cannot be changed. *Id.,* at 955 (Simpson, J., dissenting).

intent alone could be determinative, but further reasoned the trust provided objective evidence to support her stated intention to create a will substitute. *Id.*, at 953. Specifically, the panel found the trust shifted possession of the property to appellees' daughter outside of probate and permitted appellees to retain substantial lifetime rights of dominion and control over the property; this met the Restatement's definition of a "will substitute," which the panel adopted. *Id.* (quoting Restatement (Third) of Property: Wills and Other Donative Transfers § 7.1(a)).

The Commonwealth filed exceptions to the panel's opinion and order, arguing the panel erred in describing § 8102–C.3(8.1) of the Act as an exclusion from taxation, and in holding the Miller Trust was a will substitute. On review of these exceptions, an *en banc* court affirmed the panel's result on a different rationale. Although the court agreed with the panel's characterization of subsection 8.1 as an exclusion, it did not agree the settlor's subjective intent is determinative in assessing a trust's status as a will substitute. *Miller v. Commonwealth*, 18 A.3d 395, 399–402 (Pa.Cmwlth.2011) (*en banc* ). Rather, the court held evidence of such intent only relevant "in the rare case where, because of an ambiguity, parol evidence may be used." *Id.*, at 402. The court instead took an objective review of the trust's characteristics, which it found met the Restatement's definition of a "will substitute." *See id.*, at 400–02. Judge Cohn Jubelirer filed a dissenting opinion. Relying on the Restatement's definition of a "will substitute," Judge Cohn Jubelirer would have held a will is, "by its own nature ... ambulatory and revocable" during the lifetime of its maker, and an irrevocable trust, which serves a different function, therefore cannot be a will substitute. *Id.*, at 403–04 (Cohn Jubelirer, J., dissenting) (quoting Black's Law Dictionary 1598 (6th ed. 1990)).

█ The Commonwealth appealed. We have jurisdiction pursuant to 42 Pa.C.S. § 723(b) and Pa.R.A.P. 1101(a)(2), which provide for an appeal as of right from final orders of the Commonwealth Court reviewing decisions of the Board of Finance and Revenue. The issue presented for our review is

whether the Miller Trust qualifies as a living trust for purposes of the realty transfer tax. As the proper construction of the statute involves a question of law, *see Strawn v. Department of Transportation*, 609 Pa. 482, 17 A.3d 320, 327 (2011), our scope of review is plenary, and our standard of review is *de novo. See Weaver v. Harpster*, 601 Pa. 488, 975 A.2d 555, 559–60 (2009) (citations omitted). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b).

The Realty Transfer Tax Act imposes a tax on any real estate transaction evidenced by a "document." *See* 72 P.S. § 8102–C. "Document" is defined by the Act as "[a]ny deed, instrument or writing which conveys, transfers, devises, vests, confirms or evidences any transfer or devise of title to real estate, but *does not include wills*[.]" *Id.*, § 8101–C (emphasis added). Section 8102–C.3 states "[t]he tax imposed by section [8]102–C shall not be imposed upon ... [a] transfer for no or nominal actual consideration to a trustee of a living trust from the settlor of the living trust." *Id.*, § 8102–C.3(8.1). As we find this language unambiguous and the distinction unnecessary for our decision, we do not address whether § 8102–C.3 constitutes an exclusion or an exemption. *See generally Lynnebrook and Woodbrook Associates, L.P. v. Borough of Millersville*, 600 Pa. 108, 963 A.2d 1261, 1265 (2008) (citations omitted) (discussing exclusion and exemption interpretative rules as operating in absence of clear statutory distinction).

A "living trust" is defined as "[a]ny trust, other than a business trust, intended as a will substitute by the settlor which becomes effective during the lifetime of the settlor, but from which trust distributions cannot be made to any beneficiaries other than the settlor prior to the death of the settlor." 72 P.S. § 8101–C. Both parties, as well as the Commonwealth Court, focus on the portion of the "living trust" definition requiring the settlor intended that the trust be a "will substitute." *Id.* Appellees argue "[t]he words *'any trust* (other than a business trust)' were drafted by the [General Assembly] with the intention of barring only business trusts from consider-

ation of those trusts that may be 'living trusts.' " Appellees' Brief, at 20 (emphasis in original). Appellees further contend a "reasonable interpretation of the language of [§ ] 8101–C is that the *intent* of the settlor controls, not the actual legal effect of the trust"; therefore, "[t]he focus of the statutory interpretation should be on whether the phrase '*intended* as a will substitute by the settlor' should be based on the *settlor's subjective intent* or on the *settlor's objective intent* derived from the surrounding facts and circumstances." *Id.*, at 10 (emphasis in original). Appellees claim their deposition testimony evidences their subjective intent to have the Miller Trust serve as a will substitute, as found by the original Commonwealth Court panel.

▬ "Objective intent" versus "subjective intent" is inaptly framed; the actual question is intent, determined by either a subjective or an objective standard. The former can engender an analysis of the drafter's personal goal or purpose, while the latter requires a detached analysis of the document itself. The subjective intent of a settlor cannot transform a deficient document into something its actual characteristics do not support. To hold such would allow documents bearing none of the characteristics of a will substitute to qualify for § 8102–C.3(8.1)'s treatment, so long as the settlors state their intent was to create a will substitute. This cannot be the result the General Assembly intended. We therefore believe an objective standard of review is appropriate for the determination of intent.

▬ Thus, Mrs. Miller's testimony that she intended the new trust to operate as a substitution for her will [3] does not carry the day, as the trust itself does not meet the definition of a "will substitute," which we adopt from the Restatement:

[A]n arrangement respecting property or contract rights that is established during the donor's life, under which (1) the right to possession or enjoyment of the property or to a

---

3. Interestingly, the same day she executed this trust, she executed a separate new will. We do not reflect on the conundrum of simultaneously creating a will and a document purporting to be a substitute for that will.

contractual payment shifts outside of probate to the donee at the donor's death; and (2) substantial lifetime rights of dominion, control, possession, or enjoyment are retained by the donor.

Restatement (Third) of Property: Wills and Other Donative Transfers § 7.1(a). Thus, to avoid transfer tax, the transfer must be to a "living trust," as defined by the statute, which requires the transfer be intended as a "will substitute," a term defined as above by the Restatement.

While there is a tendency to stress the irrevocable nature of the trust, we do not find this dispositive in determining whether a document functions as a will substitute. Instead, we review the trust instrument as a whole to determine whether it meets the Restatement's definition. Indeed, irrevocable wills do exist; for example, the law will enforce irrevocable will provisions agreed to by contract. Conversely, irrevocable trusts may be modified, by their terms to comply with changes in the law, or modified or even terminated by court order should their purpose or ability to function be stripped away by time. For purposes of the instant question, emphasis on revocability can be misleading.

The *en banc* Commonwealth Court found the Restatement's test was met because the Miller Trust: (1) shifts possession of the trust property to appellees' daughter outside probate; and (2) appellees retain substantial lifetime rights of dominion, control, possession, and enjoyment of the property as they continue to physically live on the property and have the right to sell, transfer, or lease the property. *Miller*, 18 A.3d at 400. While the Commonwealth Court is correct that possession of the trust property shifts to the beneficiary outside probate, it does not shift at the donor's death. Rather, under the terms of the Miller Trust, nothing happens upon Mrs. Miller's death. It is only upon Mr. Miller's death, regardless of whether Mrs. Miller is still alive, that the trust is distributed. Miller Trust, at 5. In point of fact, the Miller Trust property does not shift at the donor's death, as required by the Restatement's definition of a will substitute. *See* Restatement (Third) of Property: Wills and Other Donative Transfers § 7.1(a).

It is also arguable appellees do not retain "substantial lifetime rights of dominion, control, possession, or enjoyment" of the trust property. *Id.* Given the irrevocable nature of the Miller Trust, appellees' dominion over the property is limited as they lack the ability to take it back. Additionally, as a trustee, Mrs. Miller may not act on her own behalf, but must act in the interests of the trust beneficiaries. *See* 20 Pa.C.S. § 7772(a) ("[a] trustee shall administer the trust solely in the interests of the beneficiaries"); *id.,* § 7772(b) (self-dealing transactions by trustee voidable by beneficiary).[4] Appellees may also lack substantial control. The comments to the Restatement's definition of "will substitute" state, " 'control' includes rights to revoke the arrangement or to alter the designation of the death-time beneficiary." Restatement (Third) of Property: Wills and Other Donative Transfers § 7.1 cmt. a. Under the express terms of the Miller Trust, appellees do not retain the right to revoke the trust arrangement. Miller Trust, at 2.

Appellees' possession of the trust property is also not clearly "substantial." Although appellees live on the trust property, they no longer are in legal ownership, and the irrevocable nature of the trust prohibits them from regaining the same. Appellees likewise retain limited, not substantial, enjoyment of the trust property. Enjoyment is defined as "[p]ossession and use ... of ... property." Black's Law Dictionary 571 (8th ed. 2004). As discussed *supra,* appellees do not have possession of the trust property as individuals, and their use of that property is significantly curtailed by their legal obligations as trustees. Lastly, Mrs. Miller does not necessarily retain these rights for her lifetime, as the trust terminates and distributes upon Mr. Miller's death, regardless of whether Mrs. Miller is still living. *See* Miller Trust, at 5.

4. These attributes of a trustee's duties under an irrevocable trust are in stark contrast to the duties imposed upon a trustee of a revocable trust: "Regardless of the legal capacity of the settlor, the rights of the beneficiaries are subject to the control of, and the duties of the trustee are owed exclusively to, the settlor while a trust is revocable." *Id.,* § 7753(a).

■ However, these distinctions are not needed to establish this trust fails to qualify as a living trust. The living trust definition further prohibits trust distributions to any beneficiary other than the settlor during the settlor's lifetime. *See* 72 P.S. § 8101–C, *supra.* This language reflects the purpose of the statute, which is to exclude imposition of transfer tax when property is passed by inheritance. Appellees only briefly mention this language and argue § 4.02 of the Miller Trust conclusively meets this requirement. Section 4.02, titled "Income Distribution," provides, "During the Settlor's lifetime, the Trustees shall distribute all of the net income of the Trust to, or for the benefit of, DOROTHY M. MILLER, for and during the remainder of her life." [5] *Id.* However, this argument ignores § 4.03, titled "Principal Distributions," which provides for the termination and distribution of the trust upon Mr. Miller's death. *See id.*, at 5 ("If the Settlor's spouse ... predeceases the Settlor, the Trust shall terminate ... [and] shall be distributed, absolutely" first to appellees' daughter, then her issue, then in equal shares to appellees' individual siblings.). That is, this trust may end and the property pass before the settlor dies; as such, this situation is not equivalent to inheritance. Given that § 4.03 clearly provides an avenue by which trust distributions shall be made to persons other than Mrs. Miller prior to her death, the Miller Trust in the end fails to meet the definition of living trust or will substitute.

This Court does not doubt irrevocable trusts have "distinctive features that actually render them desirable tools in constructing a will and preparing an individual's estate planning." Appellees' Brief, at 22. An irrevocable trust can be a living trust under the statute, but the Miller Trust, as written, does not qualify as a "will substitute" and therefore is not a "living trust" that qualifies for treatment under § 8102–C.3(8.1). Accordingly, the Commonwealth Court's decision is

5. This section provides for an exception to this income distribution should Mrs. Miller reside in a long-term care facility for longer than 30 days, in which case, the trust income is to be added to the trust principal, and no distribution of principal shall be made to Mrs. Miller. Miller Trust, at 4.

reversed, and this case is remanded to the Board for calculation of transfer tax consistent with this opinion.

Order reversed; case remanded. Jurisdiction relinquished.

Former Justice ORIE MELVIN did not participate in the decision of this case.

Chief Justice CASTILLE, Justices BAER, TODD and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice SAYLOR, concurring.

The majority decision turns on the fact that the Miller Trust is structured so that it is possible that the trust estate may be distributed to beneficiaries prior to the settlor's death. *See* Majority Opinion, at 90–92, 84 A.3d at 625–26. Thus, facially, the arrangement fails to satisfy the statutory requirement that a "living trust" be one from which "dispositions cannot be made to any beneficiary other than the settlor prior to the death of the settlor." 72 P.S. § 8101–C. I agree and, therefore, support the result achieved in the main opinion.

I am circumspect, however, about some of the preceding passages within the majority's analysis, several of which appear to represent *dicta.* For example, the majority downplays the role of revocability in assessing the circumstances per which a trust may function as a will substitute. *See* Majority Opinion, at 88–89, 84 A.3d at 624. For my own part, however, I am receptive to the Commonwealth's position—consistent with Department of Revenue regulations and the deference which should be accorded to these—that revocability serves a key role. *See* Brief for the Commonwealth at 16–21 (citing, *inter alia,* 61 Pa.Code § 91.101).

Finally, the majority chooses not to decide the question of whether the transactions in Section 8102–C.3 are excluded or exempted from taxation. *See* Majority Opinion, at 87–88, 84 A.3d at 623. I would merely note that the issue is a significant one which has attracted an *amicus* submission by the Philadelphia Bar Association offering its perspective that the issue

transcends the present appeal and may be of widespread importance to clientele of Association members. Plainly, the statute, collectively with its heading, fosters material ambiguity as to whether exemption or exclusion was intended for a wide array of disparate transactions. Particularly because the adjudicative process generally focuses on the facts and circumstances of individual cases (and thus each judicial decision may touch on only one of the many impacted transactions), the sort of pervasive uncertainty manifest in Section 8102–C.3 would best be resolved via legislative clarification.